Mississippi Lime and Material Company, Appellant, v. Hugh R. Smith and Charlotte Smith, Trading as Hugh R. Smith Company, Appellees.

. Opinion filed September 16, 1935. Rehearing denied October 21, 1935.

BURROUGHS, SIMPSON & REED, of Edwardsville, for appellant.

JOSIAH WHITNEL, of East St. Louis, for appellees; MALLORY BURROUGHS, of Edwardsville, and H. L. BROWNING, of East St. Louis, of counsel.

MR. JUSTICE STONE delivered the opinion of the court.

This appeal is prosecuted from a judgment of the circuit court of Madison county in bar of action and for costs of suit, against appellant. Appellant's status as plaintiff in this case is fixed by plaintiff's Exhibit 1, in evidence, which is in words and figures as follows:

"Carrie Douglas, widow of Dan Douglas, deceased, and Mississippi Lime & Material Company represent

to the Illinois Industrial Commission that Dan Douglas was killed while employed by the Mississippi Lime & Material Company at its quarry at Alton, Illinois, by a steam shovel throwing a large rock over the cliff while Douglas was working at the foot thereof, by reason of which he was crushed and died instantly; that Douglas earned an average of $15.74 per week and died leaving a widow and one dependent child. Terms of settlement: Employer to pay Carrie Douglas $3,623.92 in weekly installments of $11.00 for 329 weeks, and $4.92 for one week. Signed by Carrie Douglas and Mississippi Lime & Material Company. Certification by Industrial Commission of Illinois that the foregoing settlement contract is a true and correct copy of the contract approved by the Industrial Commission on October 24, 1933.''

The declaration charged that defendants contracted to remove dirt, boulders and rocks from the top of the plaintiff's limestone quarry at Alton, Illinois, and to cast or shove the rocks over the edge of a 75-foot cliff, except when notified not to do so on account of men working below; that the plaintiff, on January 24, 1933, notified defendants to cease dropping rock over the edge of the precipice on account of plaintiff putting men to work below, yet, nevertheless, defendants contrary to their contractual and common law duty, negligently disregarded the notice and through their agents and servants negligently and carelessly pushed a large rock over the cliff, thereby striking and killing plaintiff's employee, Dan Douglas, who, while in the exercise of due care for his own safety, was loading rock at the foot of the cliff.

It was further averred that the defendants were independent contractors; that defendant, plaintiff and Douglas were all working under and bound by the provisions of the Workmen's Compensation Act, Ill. State Bar Stats. 1935, ch. 48, ¶ 201 *et seq.;* that Douglas was killed within the course of his employment, leav-

ing a widow and one minor child; that by reason of his death plaintiff became liable to pay said widow and child $3,623.92 under the Workmen's Compensation Act; that the death of Douglas was not proximately caused by negligence of the plaintiff, whereby plaintiff claimed damages in the sum of $3,623.92.

Defendants filed a general issue and specially pleaded that Douglas was guilty of negligence which proximately caused his own death; they also specially pleaded that Douglas was killed by negligence of the plaintiff, which was the proximate cause of the fatality.

Appellant on and prior to January 24, 1933, was engaged in the stone quarry business at Alton, Illinois. This quarry consisted of a solid bed of stone about 70 feet thick; it had a perpendicular surface for the space of about 200 feet parralleling the Mississippi River. On top of this bed of stone was a deposit of dirt and disintegrated stone, some 15 feet thick. Part of the quarrying was done there by means of tunnels driven into the base of this cliff. That part of the limestone which could not be quarried by this means was obtained by stripping the overburden from the top of the 70-foot stone deposit and quarrying the stone thereby uncovered.

Some time prior to the death of Douglas appellant made a verbal contract with appellee to strip a certain amount of the overburden. The system of stripping was by first cleaning off the top dirt with a steam shovel, then scooping up the loose rock with said shovel and dropping it over the base of the cliff, where it was afterwards taken by appellant's employees and loaded in barges on the Mississippi River. The shovel started cleaning off the rock right along the edge of the precipice, dumping it over the cliff. After cleaning off this strip the shovel operator would start a new path a little farther back and continue his work, casting over the edge such stone as he could with his machinery and piling the remainder in a long row along the

edge of the cliff where another man employed by appellees with a caterpillar tractor with a blade on it about four feet wide and six feet long would push it over the precipice. This implement for want of a better name was called a "bulldozer."

Part of the contract between the parties was that appellees would stop operation on top at any time that request was made by one Milner, appellant's superintendent. This was necessary because men frequently worked at the bottom of the precipice loading trucks with stone which appellees had cast over. Milner, the superintendent, had stopped Smith's work on various occasions and there was no particular way in which the notice or request to stop was conveyed. It was a part of the agreement between the parties that the work which appellees were doing on the morning in question was to be done only when men were not working below.

On the day in question the shovel started working about seven o'clock in the morning, about 50 feet from the edge of the precipice and traveling parallel therewith. It was too far back from the edge to dump all the rock over and consequently some of it was piled near the brink where the "bulldozer" could push it over. About nine o'clock in the morning the power went off in the tunnel and men were called out to the floor of the cliff to load trucks with rock which appellees had cast over. While this was going on, Milner, appellant's superintendent, yelled up to Simpson who was the operator of the "bulldozer," saying in substance that men were going to work at the foot of the cliff and to tell Smith not to push any more rock over. There is a conflict in the evidence as to just what word Milner said to Simpson,—whether he said, "Tell Smith," or whether he said "Don't push any more rock over" or just the exact language, is not certain. It is certain from the evidence, however, that Simpson delivered some message to appellee Smith that the

men were working below and no more rock was to be pushed over, to which Smith replied, "All right," but that Smith gave no advice or instruction to his men who were operating the steam shovel, nor did he tell Simpson to tell them. After Milner sent the message up, the rock stopped coming over and the loading gang began to load rock at the foot of the precipice. They had worked there some 25 or 30 minutes when a large rock weighing several tons came over the precipice, struck Dan Douglas and killed him. The evidence is in dispute as to whether or not the steam shovel continued its casting during the interim of the stop order and the casting of the stone which killed Douglas.

The case was tried by a jury, which found the issues for appellees. A motion for new trial was overruled and the aforesaid judgment was entered. Appellant claims that the verdict is against the manifest weight of the evidence; second, that the court erred in overruling plaintiff's motion for a new trial, and in entering judgment; that the court erred in its charge to the jury, and unduly limited the cross-examination of appellee's witnesses.

Appellant being plaintiff in this suit by right of subrogation as prescribed by the statute, the burden was placed upon him of proving two things by a preponderance of the evidence:

(1) That he was at the time and place in question in the exercise of reasonable care for the safety of his employees;

(2) That the man Douglas met his death by and through the negligence of appellees.

On the first of these questions the evidence shows that when the power shut down so that the men could no longer work in the tunnel, they were ordered to work at disposing of the rock at the foot of the precipice. Before they were ordered there, however, request was made that appellees cease throwing rock

over the cliff because the men were to go to work there. The message was conveyed to appellee Smith, the work ceased, appellant's men went to work. It would seem that appellant had done the necessary specific thing to procure safety for his men against the one thing that he had need to take precaution about; that his request had been complied with by appellees and that there was no reason why a reasonable man would not order his men to work as appellant did. We do not see what more he could have done in the exercise of reasonable care. He had a contract with appellees that no rock would be thrown over the cliff while the men were at work. This contract had been kept on other occasions. Appellant under the evidence had every reason to believe it was being kept on this occasion; such a conclusion was a reasonable one under the circumstances. We see in this record no act of appellant which shows lack of due care on its part. Especially is this true in view of the fact that the circumstances would convince a reasonable man that appellant's request, which he had a right to make and a right to have complied with, had in fact been complied with.

The second proposition in our judgment was equally well established by the proof. The preponderance of the evidence shows that coincident with the request of Milner to stop pushing rock over, both machines stopped work; the men went to work below with the knowledge of appellees. They worked there for 25 or 30 minutes when without warning the large rock which killed Douglas came over the cliff. There is evidence that almost instantly before the rock came over the cliff the steam shovel was heard to begin work, and the rock fell. One witness saw the rock moved by the steam shovel. The evidence discloses no inquiry from appellees as to whether it was safe to proceed with the shovel. Work on the cliff had been stopped at the request of Milner; appellee owed to appellant the duty

of ascertaining whether it was safe to resume operations; he owed that duty at law; he owed it by virtue of his contract which he had theretofore lived up to.

We cannot divorce ourselves from the idea that appellees failed to use the care in the premises that was required of them—in other words, that through their negligence they brought about the death of plaintiff's employee.

These facts seem to us to make out a clear case of negligence on the part of appellees. Appellees answer that the question of negligence and contributory negligence was a question of fact for the jury. True it is that in the large majority of cases the verdict of the jury is final as to questions of fact and binding upon the courts. However, there is a noted exception, with which all lawyers are familiar, and that is, if the court can see upon an examination of the whole record that the verdict is against the manifest weight of the evidence, it will set aside the verdict. *Heide v. Schubert,* 166 Ill. App. 586.

We are of that opinion in this case. No negligence is shown in the conduct of appellant. Negligence is shown in the conduct of appellees. The result which followed was the proximate result of appellee's negligence. How may we then account for this verdict? In such cases it is particularly essential that a jury be properly and carefully instructed. There is a theory upon which this jury might have acted, and that theory evolves from the charge of the court. There is a suggestion that an accident brought about Douglas' death. That suggestion does not come from any evidence or circumstance in the case. It comes for the first time when the court by its charge injected into the case the theory that the death of Douglas might have come about through an accident, and if it did, there could be no recovery. It is true that this part of the charge is given in most personal injury cases, and in most injury cases the charge is proper, but in this case we can see

nothing in this record,—certainly not of fact, and not of circumstance,—which could have suggested to the jury that the death of Douglas might have come about through an accident. It was wrong in our judgment for the court to make that suggestion for the first time. Instructions which suggest matter not suggested by the evidence have been universally condemned by our Supreme Court. *Chicago & A. Ry. Co. v. Adler,* 129 Ill. 335; *Indianapolis & St. L. Ry. Co. v. Miller,* 71 Ill. 463; *Streeter v. Humrichouse,* 357 Ill. 234.

Complaint is made of undue restriction of the cross-examination of some of appellee's witnesses. In one case at least this objection is well taken. During the cross-examination of defense witness Homer Simpson, he was asked the following question:

"Q. And the shovel man was the fellow that cast this big rock over that killed Douglas, wasn't he?

"A. Yes, sir.

"Mr. Burroughs: I object. He didn't see it.

"The Court: Objection sustained."

The court did not know from the record, and neither did counsel, whether this witness saw what he testified about or not. It was a matter for redirect examination; it was not a matter for the court to assume and rule upon. This in itself was error, though it might not have controlled our decision in this case.

We cannot escape the conclusion that this verdict is against the manifest weight of the evidence and that it was probably brought about by the injection into it of the theory of an accident by the charge of the court. It is easy for the lay mind to confuse negligent acts with accidental ones. As a matter of fact many lawyers use the word "accident" when they mean "injury." The court told the jury in the face of what seems to us to be a clear case of negligence on the part of appellees that notwithstanding that, if they believed it came about by an accident they would be warranted in finding the defendants not guilty. This

part of the charge should not have been given in this case. *Streeter v. Humrichouse, supra.*

For the errors pointed out the judgment is reversed and the cause remanded to the circuit court for another trial.

*Reversed and remanded.*