Agata Leoni, Administratrix of the Estate of Salvatore Leoni, Deceased, Appellant, v. James H. McMillan, Appellee.

Gen. No. 38,801.

Opinion filed December 30, 1936. Rehearing denied January 12, 1937.

Guy C. Guerine, Paul W. Brust and A. H. D'Anza, all of Melrose Park, for appellant; Guy C. Guerine, of counsel.

Braun, Anderson & Norby, of Chicago, for appellee; Joseph H. Braun, Joseph P. Brodie and Max H. Braun, of counsel.

MR. PRESIDING JUSTICE JOHN J. SULLIVAN delivered the opinion of the court.

This appeal seeks to reverse a judgment entered December 5, 1935, by the circuit court upon the verdict of a jury finding defendant, James H. McMillan, not guilty, in an action brought by plaintiff, Agata Leoni, administratrix of the estate of Salvatore Leoni, deceased, against defendant for damages for wrongfully causing the death of said Salvatore Leoni, her husband.

The first count of plaintiff's declaration alleged that Salvatore Leoni was walking on and upon North avenue, near Maywood, Cook county, Illinois; that he was in the exercise of due care; that defendant was operating an automobile truck in a westerly direction on North avenue; that defendant negligently operated his truck and struck deceased, who died March 14, 1935; that defendant drove his truck at a speed greater than was reasonable and proper and thereby endangered persons rightfully on the highway; that defendant negligently operated and drove his truck without blowing his horn or giving any warning of his approach; that defendant negligently failed to keep a proper lookout and watch for persons lawfully upon the highway; that defendant negligently failed to apply his brakes in time to avoid running into deceased; that defendant negligently failed to heed the warning signs placed on the highway; that defendant wantonly and maliciously drove and operated his truck so as to cause it to run into deceased; that, while deceased was upon the highway, he became in danger of being run into by defendant, and, although defendant became aware of the danger to deceased, he thereafter negligently caused his truck to run into Leoni; and that plaintiff as the widow of deceased was appointed administratrix of his estate.

The second count of the complaint alleged that deceased "was then and there engaged in certain con-

struction work then and there being performed upon and along said highway''; that defendant was operating a motor truck in a ''westerly direction on the aforesaid North avenue, at and near the place above mentioned''; and that deceased was in the exercise of due care. This count then continued with the same allegations as the first count, heretofore set forth. Plaintiff filed his answer June 22, 1935, denying the material allegations of the complaint and at the same time an additional answer alleging that both deceased and defendant were under the provisions of the Workmen's Compensation Act and that under the terms of said act ''plaintiff is not entitled to maintain this cause of action.''

Plaintiff's theory is that deceased being a workman engaged in and about the highway was not obliged to keep a constant lookout for passing motor vehicles and that motorists driving where men are engaged in work in and about a public highway are bound to keep their motor vehicles under proper control so that they will not injure such workmen engrossed in their work; and that the defendant, either having been warned by signs that men were working in and about the highway or having seen them so working in sufficient time to have brought his car to a stop or under proper control, was guilty of willful and wanton conduct in failing to heed the signs or his sight of the men themselves, which should have made it apparent to him that someone would be injured if he persisted in driving in the manner that he did.

Plaintiff contends that the judgment appealed from should be reversed because the trial court erred in the following respects:

''1. The trial court erred in not setting aside the verdict of the jury finding the defendant 'not guilty' as the evidence shows the verdict to have been clearly against the manifest weight of the evidence.

"2. The trial court erred in striking from the consideration of the jury that portion of the complaint charging the defendant with willful and wanton conduct.

"3. The conduct of defendant's counsel in stating to the jury that plaintiff had filed a claim for compensation and had received compensation under the Workmen's Compensation Act was prejudicial.

"4. The trial court should have set aside the verdict and granted the plaintiff a new trial on her petition that she was taken by surprise by the testimony of the defendant, which testimony was contradicted by the affidavit of the witness, W. E. May, who was unavailable on account of illness.

"5. The court erred in permitting the use of the coroner's transcript of evidence in the cross-examination of plaintiff's witnesses, without the proper foundation having been first laid.

"6. The court erred in giving, on behalf of the defendant, instructions which suggested matters not shown by the evidence; also in giving instructions which defined the degree of care required of the deceased."

The undisputed evidence shows that on March 14, 1935, workmen were employed constructing drainage ditches under North avenue, a short distance north of the Village of Maywood, Cook county, Illinois; that about 4 p. m. of that day, deceased, who was 43 years old and in good health, with four or five other men, was so employed; that North avenue, at the place of the occurrence, was a concrete highway, running in an easterly and westerly direction, divided into two lanes, each 18 or 20 feet wide, the north lane for westbound traffic and the south lane for eastbound traffic, said lanes being separated by a dirt space or parkway eight or ten feet wide; that there was a wire fence about two or two and a half feet high north of the north edge of

the north drive; that there was a dirt shoulder two or two and a half feet in width between the north edge of the north driveway and the fence; that a truck used in connection with the construction work was parked, partly on the south side of the north roadway and partly on the dirt strip that separated the north and south drives, about 15 or 20 feet west of the tunnel above which deceased was working when he was struck by defendant's truck; and that the weather was clear and the pavement dry.

There is no serious conflict in the evidence except as to a few points. Defendant's version of the occurrence, as testified to by him, is that he was driving west on North avenue with four tons of coal on his truck; that he had frequently passed over the particular portion of the highway involved; that he was driving 26 miles an hour when he crossed Fisher avenue, about 1,000 feet to the east of the point where the accident occurred, and that when he saw ''these men in a group at that point,'' he ''pulled down around 15 to 18 miles an hour''; that ''the first time I noticed Mr. Leoni, he crossed the street, carrying a tile to the fence''; that ''I was back all of 50 to 60 feet''; that continuously thereafter his view of deceased was unobstructed; that when Leoni reached the fence ''he laid the tile down''; that ''at that time I was within probably three or four feet of him''; that after he laid the tile down ''without looking up or giving any signs, he immediately turned and started crossing the pavement''; that ''as soon as I saw him, I swerved my truck to the south''; that ''he hit the right front fender on the right side of the truck . . . right by the front wheel''; that ''all I could see he turned. As he turned, I swung the truck over to avoid running over him and came to a stop''; and that he stopped his truck about 20 feet west of the point of impact.

On cross-examination defendant testified that there was room for two cars to pass each other on the north

section of the highway; that he was driving on the extreme north lane of that section; that he saw deceased "working there"; that his brakes were in good condition and under prevailing conditions he could have stopped his truck within 15 to 20 feet; that "the fence was two feet from the pavement"; that deceased "took two steps back to the pavement" and "he was struck"; that he did not blow a horn or give any other warning of his approach; that when deceased "had laid the tile down" over the fence to the north, his back was toward the witness "when I was away from him, before I had gotten to him"; and that he did not stop his truck at any time before deceased was struck.

Bernard Rubinstein, testifying in defendant's behalf, stated that he was driving his car west on the north drive of North avenue, some distance to the east of defendant's truck; that he was traveling at a speed of 40 to 45 miles an hour and that "the truck must have been going, say approximately half the speed"; and that when he stopped his car with its right rear door opposite the body of deceased "it was about two lengths from my car to Mr. McMillan's truck" where it stopped after striking deceased, and that the construction truck was parked in the center dirt strip, about in between his car and defendant's truck.

Louis Macro, Leoni's foreman, testified in plaintiff's behalf that just prior to the accident deceased had carried pipes across the north pavement; that he talked to deceased about a minute before he was struck; that at the time he spoke to him Leoni was handing a pipe down to the men who were working north of the fence; that that was the last pipe to be carried across the road; that he saw Leoni standing between the north edge of the pavement and the fence; that, after he had left Leoni and was walking toward the parked truck, he heard a commotion and went back; that he found the body of the deceased 20 feet west of the tunnel where he had been working; that he was lying with his

feet on the dirt and his head on the pavement; that defendant's truck was then 25 feet west of the body of deceased; that he saw skid marks within a foot of the north edge of the pavement that were not there before the accident; that there were signs on dirt piles in the parkway between the two sections of the high-way east of where the men were working which stated, "Slow Down, Men Working"; that these signs were two feet long; and that there was no horn blown or warning of any kind given by defendant.

Frank Monfeli, a fellow workmen of Leoni, testified in plaintiff's behalf that he was employed with Leoni and four other men in the construction of a drainage sewer; that he was working north of the fence; that he was about 10 feet north of the north edge of the road and facing south; that Leoni was standing about one foot off the pavement, facing northwest at the time he was struck; that he saw the truck "come from east going west" about 30 to 35 feet away from where Leoni was standing, and that the truck was traveling at a speed of from 30 to 35 miles an hour, near the north edge of the pavement; that at the instant of the actual impact he was digging and did not see it; that after the accident defendant's truck was standing on the north edge of the pavement, 25 to 35 feet west of Leoni's body and from 40 to 45 feet west of the tunnel where Leoni and the other men were working.

Dominick Ribani, another fellow workman of Leoni, testified in plaintiff's behalf that at the time of the accident he was working to the north of North avenue, digging a ditch; that there was a fence about two and a half feet high approximately two feet north of the north edge of the pavement; that he was working north of the fence and Leoni was south of the fence, on the shoulder between the north edge of the pave-ment and the fence; that after Leoni had dropped the pipe over the fence he stood facing north, with one

foot on the pavement and one foot on the dirt shoulder; that the witness saw the truck coming at a speed of about 30 or 35 miles an hour; that he saw the right front fender of the truck strike deceased and "I seen him turn like a somersault"; that after the accident Leoni's body was lying about 15 feet west of the ditch where he had been working and defendant's truck stopped about 60 feet west of said ditch; that no horn was sounded by defendant before the accident; that before defendant's truck struck Leoni "it was about a foot away from the edge of the pavement"; and that "he made a swing about five feet after he hit him and came back on the same line again."

The first question presented for our determination is whether the verdict was against the weight of the evidence. In our opinion it unquestionably was. The evidence shows clearly that defendant could have avoided striking deceased if he had blown his horn in sufficient time to have warned him of the approach of the truck, or if he had stopped his truck, or even reduced its speed or if he had turned his truck, even slightly, to the left or south, where the road was entirely clear at that immediate point. When defendant was 50 or 60 feet east of the point of impact, he, even according to his own version, had an unobstructed view of deceased carrying the concrete pipe from the center dirt strip north across the north drive to the fence. He stated that he kept on going at the same speed and that when the deceased, with his back toward defendant, dropped the pipe over the fence, his truck was within three or four feet of him. It developed that there were no more pipes to be carried, but there is nothing in the evidence to indicate that defendant was aware of that fact, and in the exercise of reasonable care he might well have assumed that when deceased delivered the pipe which defendant saw him carry, he would go back south across the road for

another. Deceased was doing heavy work as a laborer and, while his size does not appear from the evidence, it is fair to assume that he was a man of average size. The dirt shoulder between the north edge of the highway and the fence over which Leoni dropped the heavy pipe, did not afford him much more room, if any, than enough to straighten up after depositing the pipe and to turn around. The work of deceased gave him not only the right but compelled him to be where he was at the time he was struck and immediately prior thereto. Even according to defendant's uncorroborated testimony, deceased had not advanced any further than to the very edge of the road. Defendant stated that deceased, from his place at the fence, with his back toward defendant, "took two steps back to the pavement" and was struck. One of plaintiff's witnesses placed deceased with one foot on the dirt shoulder and the other on the pavement near its north edge when he was struck. Although defendant stated that he swerved his truck to the south "to avoid running over him," when he was almost upon deceased, this statement is refuted by all the other evidence in the record, as well as by the physical facts. After Leoni was struck skid marks were found on the road, which commenced about four or five feet east of the point of impact, and these marks of the right tires of the truck were about one foot south of the north edge of the highway. It is a matter of common knowledge that there is some overhang of the fenders of auto trucks beyond the wheels and tires and it necessarily follows that if Leoni was barely on the edge of the road or even without his being on the road at all, if his body protruded slightly over the edge of the road, he would have been struck.

Although plaintiff's witnesses testified that several men engaged in the construction of the drainage sewer were working about eight or ten feet north of the point

where deceased dropped the tile over the fence, that there were piles of dirt from the several tunnel excavations, both on the dirt strip south of the north drive and beyond the fence to the north of said drive, and that there were signs containing the warning "Slow Down, Men Working," on dirt piles in the center parkway of North avenue, east of where deceased and his fellow employees were working, defendant denied seeing any piles of dirt, signs, or men working, other than deceased. In any event defendant did see Leoni working on the street when he was 50 or 60 feet to the east of him. He knew that the space between the north edge of the pavement and the fence was only about two feet in width. He should have realized that Leoni's employment might require him to turn around and immediately recross the highway for another pipe. He should have known that the mere act of straightening up, after depositing the tile over the fence, and turning around in the two-foot space would in itself bring the deceased to the very edge of the roadway. Yet defendant continued to hug the north edge of the road with his right wheels within one foot of the edge thereof and with the overhang of the right fender at or near the very edge. Defendant did not blow his horn or give any other warning of his approach. He could have stopped his truck within 15 or 20 feet, but he not only did not stop it before striking Leoni but he did not even reduce its speed after he left Fisher avenue, which was about 1,000 feet east of the accident. The roadway was 18 or 20 feet wide, and although at the time it was entirely free of other traffic it is clear from the evidence that defendant did not change his course of travel one iota until after the impact, when, according to his own testimony, he swerved to the south to avoid "running over" deceased.

According to defendant, Leoni only "took two steps back to the pavement" from the fence when he was struck. This placed him at the edge of the pavement, whether he was just on the pavement near its edge or on the dirt shoulder near the edge of the pavement. Defendant testified that he was driving at a speed of only between 15 to 18 miles an hour at the time of the occurrence, but this evidence is refuted by the practically undisputed evidence that Leoni's body was thrown at least 15 or 20 feet forward by the force of the impact and defendant's own testimony that, when he stopped his truck, it was 20 feet west of the body of deceased.

Drivers of vehicles must take notice of men working on the highway and to exercise care not to injure them, and a workman has a right to assume that this will be done. (*Nehring v. Monroe Stationery Co.* (Mo. App.), 191 S. W. 1054.) It is clear that under the facts and circumstances of this case it was the duty of defendant to manage his truck with such a degree of care as not unnecessarily to endanger deceased while he was attending to his work and Leoni had a right to rely on the fact that the drivers of automobiles using the highway, who had knowledge of his presence and saw him at work, would exercise reasonable care in managing their automobiles, so as not to injure him. (*Carneghi v. Gerlach,* 208 Ill. App. 340.)

We regard it as a reasonable and just inference from all the evidence in this case that defendant, if not guilty of wilful and wanton conduct, was unquestionably negligent in the management of his truck, not only in running it at a greater rate of speed than was consistent with the safety of the workman, Leoni, whom he admits he saw, and in failing to blow his horn as a warning of the approach of his truck, but that he was negligent also in not turning to the left or south soon enough to avoid striking the deceased when the entire roadway was clear on that point.

As to the question of Leoni's exercise of care for his own safety, it must be remembered that he was rightfully in the place where he was struck. While it was for the jury to determine as to whether or not plaintiff's intestate was guilty of negligence that contributed to the injury which resulted in his death, we are impelled to hold that an unprejudiced jury was bound under all the facts and circumstances appearing in the record before us to find that Leoni was in the exercise of due care, both at the time he was struck and immediately prior thereto.

Although the verdict of the jury is usually final and binding upon the court as to questions of fact, if it can be seen from an examination of the entire record that the verdict is clearly and manifestly against the weight of the evidence and should have been set aside by the trial court, this court will not hesitate to reverse the judgment on appeal. (*Mississippi Lime & Material Co. v. Smith,* 282 Ill. App. 361; *Donelson v. East St. Louis & Suburban Ry. Co.,* 235 Ill. 625; *Connors v. Winke,* 200 Ill. App. 351; *Williams v. Parmalee Transfer Co.,* 194 Ill. App. 468.)

The verdict in the instant case, in our opinion, could only have been reached as a result of prejudice engendered in the minds of the jury by reason of the injection into this case by defendant of the Workmen's Compensation Act, which well might have caused the jury to believe that plaintiff had been fully compensated for the death of her husband or because the jury was prejudiced or misled by the instructions of the court, several of which were palpably erroneous. It is unnecessary to discuss these instructions in detail because they are so obviously erroneous that the faults therein will in all likelihood not recur upon a retrial of this cause.

Under all the facts and circumstances in evidence, as hereinbefore set forth, we are of the opinion that the trial court also erred in striking that portion of

the complaint charging the defendant with wilful and wanton conduct.

It is impossible to determine from the record whether the provisions of the Workmen's Compensation Act are applicable to the issues in this case. When the case is retried that question should be properly presented and determined by the trial court.

Other points are urged, but in the view we take of this cause we deem it unnecessary to discuss them.

For the reasons indicated herein the judgment of the circuit court is reversed and the cause remanded.

*Reversed and remanded.*

FRIEND and SCANLAN, JJ., concur.