Charles V. Palmer, Plaintiff-Appellee, v. The Emery Transportation Company, Now Known as The Midwest Emery Freight System, Inc., Defendant-Appellant.

Gen. No. 53,333.

First District, First Division.

August 17, 1970.

Gerrard and Gerrard, of Chicago (Michael A. Gerrard and Allen S. Gerrard, of counsel), for appellant.

James A. Dooley, of Chicago, for appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This is an appeal from a judgment entered on a jury verdict in the amount of $55,000 in a personal injury action in favor of the plaintiff, Charles V. Palmer, against the defendant, Emery Transportation Company, now known as the Midwest Emery Freight System, Inc.

There were disputes as to the facts of the occurrence and the extent of plaintiff's injuries. Plaintiff, a truck driver, was the only witness to the occurrence. He left his home terminal in Pennsylvania with a load of beer. He drove a diesel powered tractor and trailer over his regular run to Milwaukee. After leaving Milwaukee, he proceeded alone at about 55 m. p. h. in a southerly direction on the Tri-State Tollway on May 25, 1960, until he arrived in Worth Township, Cook County, Illinois. The Tollway at this point had two lanes and a blacktop berm along the side. He overtook a tractor trailer unit, the name on which he couldn't make out. He blinked his lights to let the other driver know he was going to pass, was given a signal to pass, and as he pulled out to pass, noticed that the trailer was red and the name on the truck was "EMERY" in block letters. A few minutes later he saw that the truck he had just passed was going around him. When that truck got to where the tractor and trailer hook together, it started cutting toward him. Plaintiff testified that he took his foot off the throttle, started tapping the airbrakes, blew his horn and drove onto the blacktop berm. He heard a scrape, and his truck went down the embankment. Plaintiff attempted to straddle the ditch, but couldn't, and his truck went over on its right side, throwing him across the right door against the window and other parts of the truck. The other vehicle continued on without stopping. Plaintiff testified as follows: "I had occasion to see a sign on the side of this cab as he was cutting over towards me. The cab had

Emery Transportation Company and a bunch of numbers on it; that is Emery on one line and Transportation Company on another line. The color of the letters were white." Plaintiff said that he had seen other red vehicles owned by Emery before the accident. He had also seen green ones, but never silver or yellow.

Harold Rubenstein, an official of the defendant, testified that his firm employed about 500 drivers and owned about 500 tractors and 900 trailers. The company's policy was for its vehicles not to use the Tri-State Tollway because of the expense involved. The uniform color of its 500 tractors was yellow and its trailers were of a metallic color on the day in question. He said that on that date his firm did not own or operate a red tractor or trailer, and had never owned or operated a green tractor or trailer. He testified that the defendant never had just the name "EMERY" on its trucks, and the name was never printed in white. Mr. Rubenstein said that there is another company with the name Emery called Emery Air Freight which also uses the highways, but has no relation to the defendant. A vice-president of the defendant also testified that its vehicles were yellow on the date in question. Samuel J. Ross testified that he had been a painter for Midwest Emery for 22 years and that every truck owned or leased by the defendant came through his parts shop in Chicago. In May, 1960, the company had yellow cabs with black fenders and red chassis and silver trailers.

James Van Zeyl, a state police officer, testified that when he arrived at the scene of the accident, plaintiff was shaken up so he called an ambulance. He testified that plaintiff told him that another truck passed in front of him and he lost control of his truck. Plaintiff did not tell the officer anything about the identity of the other truck other than that it was a semi. Officer Van Zeyl said that there were no skid marks and plaintiff never told him that he jammed on his brakes.

In rebuttal, plaintiff's witnesses included a truck driver who said he had seen red cabs with "Emery Transportation Company" and "EMERY" in black letters. Another truck driver had also only seen red tractors with

"EMERY" on the box. A Regional Safety Inspector for the United States Department of Transportation said that he had seen the defendant's tractors painted yellow and some that were red and green. He had never seen any trailers that were red or green. He had seen the yellow equipment around May, 1960, but couldn't recall if he had seen any other colors at that time. A second safety inspector said that in 1960 Emery had yellow, red, blue and brown tractors. The trailers were primarily silver. Some had "EMERY" on them.

Defendant's main contention on appeal is that a number of improper questions and prejudicial remarks made by plaintiff's counsel deprived it of a fair and impartial trial and that this misconduct necessitates a new trial. After a thorough examination of the record, we are compelled to agree.

In his opening statement, after outlining what the evidence would show as to the occurrence, plaintiff's counsel enumerated some of the injuries and resulting damages sustained by plaintiff. He then told the jury, "The evidence will be that his bills were paid for by the Department of Public Assistance of the State of Pennsylvania which have (sic) to be reimbursed." To this statement an objection was made and sustained.

During direct examination of the plaintiff by his counsel, plaintiff testified concerning the doctors he had seen and the expenses he had incurred. He was then asked:

Question: "Who took care of those bills?"

Mr. Gerrard: "Object, if your Honor please."

Mr. Jenkins: "Someone had to take care of them. I think I have a right."

Mr. Gerrard: "I object to counsel's statement."

The Court: "I will sustain that objection."

Mr. Jenkins: "In any event, you didn't have to pay those bills, did you?"

Answer: "No, sir, I did not."

Question: "Up to the present time, that is."

Answer: "Yes."

Mr. Gerrard: "Object, if your Honor please, to that statement."

The Court: "It is overruled."

During the further examination of this witness, after the witness testified that he still wears a sacroiliac brace, the following took place:

Question: "I have here what has (sic) been marked plaintiff's exhibits No. 1, 2, 3, 4, 5. Now are these medical bills that you are yourself paying?"

Answer: "Yes, sir."

Mr. Gerrard: "Objection, if your Honor please."

The Court: "Just a minute, let's have a conference."

Mr. Jenkins: "Your Honor, I will withdraw these bills."

The Court: "Let's look at them before we go ahead."

(Whereupon a discussion was had outside the presence of the jury.)

Mr. Jenkins: "I want the record to show that I am withdrawing plaintiff's exhibits No. 1 through 5 which are various medical bills."

As the Supreme Court stated in Crutchfield v. Meyer, 414 Ill 210, 214, 111 NE2d 142, 144:

The rule in this State must be regarded as settled that misconduct of counsel of the character mentioned is sufficient cause for reversing a judgment, unless it can be seen that it did not result in injury to the defeated party. The questions to be determined are, therefore, whether the improper argument was of such a character as was likely to prejudice the defeated party, and, if so, was the verdict clearly so right that a new trial ought not to be granted because of such prejudicial argument.

We believe plaintiff's counsel improperly and prejudicially implanted in the minds of the jury that plaintiff

was on relief and would have to reimburse the State of Pennsylvania for his medical expenses. Plaintiff's counsel continually attempted to draw the jury's attention to plaintiff's medical bills. Counsel implied that plaintiff was impecunious, but would have to repay the bills if he did not win the suit and that defense counsel was trying to keep important information from the jury.

This was clearly improper. See Jacobson v. National Dairy Products Corp., 32 Ill App2d 37, 176 NE2d 551, where defense counsel also referred to plaintiff's financial condition and was successful in getting before the jury that he had important information which his opponent was depriving the jury the opportunity of hearing. In Hickey v. Chicago Transit Authority, 52 Ill App2d 132, 201 NE2d 742, the court commented that several remarks of plaintiff's counsel during the course of the trial implied that plaintiff was impecunious and in final argument compounded the prejudice. The court held that reference to the financial condition of the parties in final argument was improper.

In addition we feel that it was unfair in such a close case for plaintiff's counsel to comment in his closing argument on the failure of the defense to produce some of its truck drivers or dispatchers as witnesses on the question of the color of its trucks, when it had produced other evidence on that point.

We do not agree with plaintiff's counsel that the defendant fails to recognize the realities of a trial nor are we persuaded by the cases cited to us by plaintiff. The question of whether improper argument deprived a litigant of a fair trial is considered in the light of its own particular facts. After examining the record, we are not in accord that the improper and prejudicial actions were provoked by conduct by the defense counsel. Nor do we believe that the error was cured by the instruction to the jury by the court to disregard it. The damage was done. See Berg v. Collier, 60 Ill App2d 145, 208 NE2d 353, which was also a close case in which the court concluded that a direction to disregard an improper question and answer did not remove the prejudicial effect.

We repeat this was a close case on the facts. Plaintiff's version was the only testimony as to the actual occurrence. The evidence was in sharp conflict. In consequence, the jury might have determined the issues for either party. It, therefore, becomes vitally important that the jury not be influenced or prejudiced by any improper conduct by counsel which deprives either party of a fair trial. The prejudicial misconduct as set out above, especially in such a close case, could, in our judgment, have affected the issue of liability as well as damages. The case must therefore be remanded for another trial.

Since the case must be retried, we do not deem it necessary to discuss other issues raised by the defendant. The judgment of the Circuit Court is reversed and the case remanded for a new trial.

Reversed and remanded.

MURPHY and ADESKO, JJ., concur.