MIKE DIPAOLO, Plaintiff-Appellant, *v.* RUTH JOHNSON, Defendant-Appellee.

(No. 56483; )

First District (5th Division)—November 2, 1973.

*Modified upon denial of rehearing December 6, 1973.*

Sidney Z. Karasik, of Chicago, (Gary E. Dienstag and Stuart N. Litwin, of counsel,) for appellant.

Baker & McKenzie, of Chicago, (Francis D. Morrissey, Thomas F. Tobin, and Peter J. Mone, of counsel,) for appellee.

Mr. JUSTICE LORENZ delivered the opinion of the court as modified upon denial of petition for rehearing:

Plaintiff sued defendant for damages for the injuries he sustained as a result of being struck by defendant's automobile. The jury returned a verdict in favor of defendant and the trial court entered judgment thereon. Plaintiff appeals contending: (1) that the trial court erred in denying his post-trial motion, (2.) that the trial court erred in permitting testimony and comments regarding plaintiff's financial wealth, and (3) that the trial court improperly instructed the jury regarding a motorist's duty to care toward workmen on a roadway.

At trial, plaintiff testified regarding his annual income and regarding his contracts with the City of Des Plaines for the construction of water lines, including one along the east side of Mt. Prospect Road, a two-lane north-south blacktopped road with a painted center line and gravel shoulders. These contracts required plaintiff to correct defects and to work at night only with proper warning devices and with the permission of the City Engineer. Although on direct examination plaintiff answered in terms of money a question regarding the amount of work which had been completed, on cross-examination defense counsel twice mentioned the total value of the contracts to plaintiff's company, $123,000. Plaintiff's objection to the first mention of this amount was overruled, but he did not object to its second mention.

On Saturday, April 3, 1965, following the discovery of a leak in the water line along the east side of Mt. Prospect Road, plaintiff and his crew placed several barricades north of the construction site and proceeded to repair the leak by digging a trench along the roadway, placing the dirt in a large pile in the northbound lane of the road, blocking that lane but not extending into the southbound lane. As it became dark and repairs on the pipe were completed, plaintiff had the lights of two trucks facing north on the west shoulder of the road turned on but set out no flares or smudge pots. One of plaintiff's employees then began clearing the roadway with an end loader with plaintiff directing southbound traffic using a red flag and flashlight. Plaintiff would stop the traffic about 150 feet north of the construction site, then let it proceed when another employee directing northbound traffic signaled, and then would walk back toward the construction site to make sure the end loader did not enter the southbound lane while traffic was passing. At about 7:00 P.M.,

after directing traffic for about an hour, plaintiff was walking in the east lane of the road back toward the construction site, when he heard someone shout a warning, but before he could respond, he was struck from behind by an automobile. He did not testify whether or not he was conscious after the accident. On cross-examination prior inconsistent statements were admitted as impeachment.

Plaintiff's brother-in-law, Mike Nero, who at the time of the accident was operating the end loader with his back toward the southbound lane, testified and essentially agreed with plaintiff. He further testified that the car had been traveling at 50 or 55 miles per hour although it took only about 75 feet for it to stop after hitting plaintiff and that after being hit plaintiff landed in the middle of the east lane on the south side of the pile of dirt.

Defendant Ruth Johnson testified that she was driving her mother to O'Hare airport about 7:00 P.M. on April 3, 1965, along Mt. Prospect Road which has a speed limit of between 35 and 45 miles per hour, that it was dark and she had her headlights on low beam, and that she noticed two sets of stationary lights. She slowed her car from between 30 and 35 miles per hour to between 20 and 30 miles per hour. She saw the pile of dirt and realized that construction was in progress but saw no one in her path. As she was passing the dirt, she heard a thud, stopped the car, and saw plaintiff lying unconscious on the ground. She testified that at all times her car had stayed in the west lane of the road.

The testimony of Mrs. Bernard Moody, defendant's mother essentially agreed with her daughter's. She testified that she did not become aware of anything unusual until she heard a thump.

Officer William Walters, the investigating police officer, testified that he proceeded south on Mt. Prospect Road to investigate a reported accident. Although he saw two sets of lights facing him, he noticed no barricades or flares. As he reached the scene, he observed an end loader parked in the east lane facing south almost straddling the center line and observed plaintiff lying on the road to the left, south of the pile of dirt. Plaintiff told him that at the time of the accident he was not standing on the mound of dirt but had been directing traffic on the other side of the end loader. Later on rebuttal, John Pierce, an investigator for plaintiff's attorney, testified that the officer had told him the previous night that he had been unable to speak to plaintiff at the scene.

The record indicates that during final argument defense counsel, without objection, mentioned the incorrect amount of $213,000 as the value of the contracts with the City. The record also discloses that the court gave I.P.I. Instruction 70.03 relating to the respective rights-of-way of pedestrians and motorists, and a notation appearing on the instruction

shows that it was given over plaintiff's objection. It did not give plaintiff's requested I.P.I. Instruction 71.04 relating to the protection of workmen on a roadway. The jury returned a verdict in favor of defendant and the trial court entered judgment thereon. Plaintiff then filed a post-trial motion for judgment notwithstanding the verdict or for a new trial. Although plaintiff's complaint alleged that he "was a pedestrian standing lawfully on Mount Prospect Road * * * in the course of his employment * * *" and defendant's answer denied that plaintiff "was a pedestrian insofar as this term connotes a legal status * * *," plaintiff alleged in his motion that I.P.I. Instruction 70.03 given by the court was error "for the reason that there was no evidence tending to show that the Plaintiff was a pedestrian crossing a roadway." The court denied the post-trial motion.

*OPINION*

■■ Plaintiff first contends that the trial court erred in denying his post-trial motion which alternatively requested judgment notwithstanding the verdict or a new trial. The standards for granting judgments notwithstanding the verdict and for granting new trials differ, but each relates to the sufficiency of the evidence. Plaintiff argues it was established that he was injured as a result of defendants negligence and that the evidence did not establish that he was contributorily negligent. Although plaintiff in his argument and by his citations, primarily *Leoni v. McMillan,* 287 Ill.App. 579, 5 N.E.2d 742, emphasized that defendant may have been negligent, the instant case depends primarily upon whether there was sufficient evidence for the jury to find that plaintiff was contributorily negligent.

■■ Although plaintiff, in his brief, attempts to limit consideration on the question of contributory negligence to his violation of his contract regarding night work and to his failure to provide adequate warning devices, we are not convinced that the evidence of contributory negligence is so limited. In our estimation, substantial questions also exist regarding exactly where plaintiff was standing at the time he was injured and exactly what he was doing. In the jury's consideration of these questions, the impeachment of plaintiff and the testimony of the officer may have been quite influential. The jury is the trier of fact, not the trial court. In these circumstances, we cannot say that the trial court erred in denying plaintiff's post-trial motion.

Plaintiff next contends that the trial court erred in permitting comments regarding plaintiff's financial wealth. He argues that defense counsel's reference to the amount of the contract with the City in cross-examination of plaintiff and to the wrong amount in final argument was reversible error. Defendant responds that such references were proper

but, even if improper, they were insignificant and, in any event, were waived by plaintiff's failure to object.

■■ Comments relating to a party's wealth are improper when they appeal to the prejudice of the jury. This rule is based upon the assumption that juries tend to favor those who are least able to bear the loss resulting from an injury. (See Annot. 32 A.L.R.2d 9.) In the instant case we are convinced, from our review of the record, that plaintiff was not prejudiced. Here the jury was fully apprised of plaintiff's income and knew that it was not great. In these circumstances, we can say beyond a reasonable doubt that the comments in question would not have affected the verdict and their admission therefore did not constitute reversible error.

Plaintiff lastly contends that the trial court improperly instructed the jury regarding a motorist's duty of care to workmen on a roadway. Plaintiff argues that giving I.P.I. Instruction 70.03 [1] and not giving I.P.I. Instruction 71.04 [2] misled the jury. Plaintiff points out that the case of *Carneghi v. Gerlach*, 208 Ill.App. 340, establishes a motorist's duty of greater care toward workmen, that workmen are specifically exempted from compliance with the Uniform Act Regulating Traffic on Highways (Ill. Rev. Stat. 1963, ch. 95½, par. 120(d)), and that the comments to I.P.I. Instruction 70.03 warn of the danger of giving that instruction where the jury may conclude that motorists have an absolute right-of-way. Defendant also argues: that another section of the statute (Ill. Rev. Stat. 1963, ch. 95½, par. 1—142) specifically indicates that plaintiff was

---

[1] I.P.I. Instruction 70.03 given to the jury provides:
"There was in force in the State of Illinois at the time of the occurrence in question a certain statute which provides that:
'Every pedestrian crossing a roadway at any point other than within a marked crosswalk or within an unmarked crosswalk at an intersection shall yield the right-of-way to all vehicles upon the roadway.
Notwithstanding the provisions of the section every driver of a vehicle shall exercise due care to avoid colliding with any pedestrian upon any roadway and shall give warning by sounding the horn when necessary and shall exercise proper precaution upon observing any child or any confused or incapacitated person upon a roadway.'
If you decide that a party violated the statute on the occasion in question, then you may consider that fact together with all other facts and circumstances in evidence in determining whether or not a party was contributorily negligent before and at the time of the occurrence."

[2] I.P.I. Instruction 71.04 requested by plaintiff but not given provides:
"At the time of the occurrence in question there was in force in the State of Illinois a statute providing that the provisions of the Uniform Act Regulating Traffic on Highways shall not apply to persons, motor vehicles and other equipment while actually engaged in work upon the surface of the highway but shall apply to such persons and vehicles when traveling to or from such work."

a pedestrian; that the statutory exemption is inapplicable since plaintiff was an *independent contractor;* and that plaintiff waived any error by failing to include the instructions conference in the record on appeal.

It is clear, both in statute and in case law, that workmen *attending to their duties* upon the roadway have the right to expect that motorists *who know of their presence* will exercise reasonable care not to injure them. This rule is based upon the fact that workmen who are working upon a roadway are likely to be devoting their attention to their duties rather than to oncoming traffic. In the instant case, not only does plaintiff's complaint allege that he was a pedestrian, but the facts do not indicate the plaintiff himself was actually engaged in cleaning or repairing the roadway at the time of the accident. He was directing or supposed to be directing southbound traffic. Had he been attending to his duties which involved looking out for oncoming southbound traffic, it is difficult to understand how he would have been struck from behind by a southbound auto. In these circumstances, even assuming this specific objection was made in the instructions conference and without considering whether the statutory exemption for workmen applies to private contractors, we cannot say that the trial court erred. Moreover, even if it did err, before it could be stated that a jury was misled by a single instruction, all the instructions given to the jury should be considered. In the instant case, we would be hard pressed to determine that such an error was more than harmless in view of the totality of *the instructions* which were given.

Therefore, the judgment appealed from is affirmed.

Affirmed.

ENGLISH and SULLIVAN, JJ., concur.