ROBERT BRANDEL, Plaintiff-Appellee, *v.* YELLOW CAB COMPANY, Defendant-Appellant.

First District (5th Division)    No. 80-0200

Opinion filed June 26, 1981.

Jesmer & Harris, of Chicago (Charles E. Tannen, of counsel), for appellant.

Baskin, Server & Berke, of Chicago (Robert L. Fogel, of counsel), for appellee.

Mr. JUSTICE WILSON delivered the opinion of the court:

Defendant, Yellow Cab Company, appeals from the judgment entered on a jury verdict for plaintiff, who was injured when his bicycle collided with a cab. On appeal, defendant contends that it was deprived of a fair trial because of plaintiff's counsel's repeated misconduct and the submission of an erroneous instruction to the jury. Defendant further contends that because of plaintiff's counsel's inflammatory and irrelevant argument, the damages award was excessive. We affirm the verdict as to liability but order a remittitur of a portion of the damages award.

On May 22, 1973, plaintiff, 53 years old, was injured while riding his bicycle on a sidewalk in front of a Yellow Cab garage. He testified that a cab suddenly emerged from the garage, directly into his path, when he was approximately 10 feet away. Plaintiff braked but could not stop in time and consequently collided with the left front wheel of the cab. Upon impact, he fell from his bicycle, landing on his left hip. He testified that the cab, after briefly stopping, continued driving out of the driveway and down the street.

Sawa Kaufbusch, who owns a shop next to the cab garage, testified that he heard a crunching noise and turned to see plaintiff lying on the ground. He saw a cab in the driveway. Kaufbusch then went back to his shop to call the police. Upon his return the cab was no longer in the driveway. Kaufbusch testified that he assumed the cab had returned to the garage.

When the police arrived, plaintiff asked for an ambulance. Officer Chiavole testified at trial that when he arrived he saw plaintiff seated near the garage and a cab in the driveway. He talked to an employee but failed to ascertain who had been driving the cab or the license plate number. He further testified that the employee's version of the incident was incorporated into his police report.[1] Officer Chiavole testified that plaintiff had

---

[1] This Yellow Cab employee was not called to testify at trial. According to his deposition testimony, he did not witness the incident.

told him the cab was parked in the driveway and he had to swerve to avoid hitting it, at which time his wheel "buckled" and he fell off the bicycle. On cross-examination, however, Officer Chiavole stated that plaintiff was "incoherent" during their interview. Plaintiff denied telling the officer this version of the incident and further denied that it happened that way.

Plaintiff was taken to a hospital for treatment. A cab company investigator, accompanied by Officer Chiavole, came to the hospital and took a statement from plaintiff. The investigator did not identify himself. Plaintiff stated that he was in pain when the investigator talked to him and that although he recognized his signature on the purported statement, he did not recall reading the document or signing it. The statement was not offered into evidence and the investigator did not testify at trial.

The same cab company investigator also interviewed Kaufbusch about the incident and asked him to sign a written report of their conversation. After glancing briefly at the paper, Kaufbusch refused to sign it. Kaufbusch testified at trial that the report contained untrue statements. Further, he testified that the investigator had promised to "take care of any problems" if Kaufbusch signed it. This report was not received into evidence, either.

Plaintiff's third and final witness was Dr. Sydney Morgenstern, who operated on plaintiff's hip after the incident. He testified that plaintiff was in pain when he arrived at the hospital for treatment. The X rays disclosed a fracture at the neck of the femur, which Dr. Morgenstern testified is the "worst type of fracture you can get in the hip" because the blood supply to that area is very poor and it does not heal well. According to Dr. Morgenstern, it is uncommon to sustain this type of fracture absent a significant force or trauma. The doctor also testified as to the surgical procedures he used to install a rigid compression screw and plate in plaintiff's hip.

After a three-week hospital stay, plaintiff was discharged. He used crutches for six months and walked with a limp after he stopped using crutches. During a follow-up visit to Dr. Morgenstern, X rays taken of plaintiff's injury revealed that the fracture had successfully mended. In July of 1979, however, X rays of the fracture indicated arthritis and necrosis of the head of the femur, resulting from a lack of blood to the area. In Dr. Morgenstern's opinion, these conditions were causally connected to plaintiff's fall. He testified that the appropriate treatment would be a total hip replacement, which he believed other orthopaedic surgeons would have performed by the time of the trial. His more conservative view, however, was to wait until plaintiff, then 59, was older, to increase the chance that the artificial hip would last for the rest of his life.

Plaintiff testified regarding the continuing pain in his hip. He stated

that he was forced to lie in a certain position to sleep at night and that during the day his left leg felt like it was "going to give." He further testified that he was taking medication for the pain.

At the close of the evidence, defendant moved for a mistrial on the basis that plaintiff's counsel had repeatedly alluded to plaintiff's poverty and the fact that he was on public aid. He also moved for a directed verdict on the ground that plaintiff was contributorily negligent, as a matter of law, because he had ridden his bicycle on the sidewalk in violation of a city ordinance, was not looking straight ahead, and did not see the cab until it was half-way out of the garage. The court denied both motions. Following a conference on the jury instructions and the scope of permissible arguments, counsel presented their closing arguments.

The jury returned a verdict in favor of plaintiff, assessing damages of $150,000. They also answered, in the negative, a special interrogatory as to plaintiff's contributory negligence. The subsequent post-trial motion was denied, following a lengthy hearing.

OPINION

I

■■ Yellow Cab's first and major argument is that it was deprived of a fair trial because of the repeated misconduct of plaintiff's attorney. After examining the trial transcript, however, we disagree. In analyzing the specific instances of alleged misconduct we must bear in mind that the trial court, in observing the attitude and demeanor of counsel, was in the superior position to determine the effect of counsel's remarks on the jury. We are limited to determining whether the trial court's denial of the defendant's motion for a new trial was an abuse of discretion. *Enloe v. Kirkwood* (1970), 120 Ill. App. 2d 117, 256 N.E.2d 459.

■■ Although Yellow Cab does not argue that the jury's verdict is against the manifest weight of the evidence, it characterizes the liability issue as presenting a close question of fact. Accordingly, defendant argues that the errors require reversal because of the strong likelihood that they incited the jury's passion or prejudice. While it is true that in a close case, "any substantial error which might have tipped the scales in favor of the successful party calls for reversal" (*Both v. Nelson* (1964), 31 Ill. 2d 511, 514, 202 N.E.2d 494, 496), we do not believe that "substantial errors" are present in this case. We need not determine, therefore, whether this is a "close" case. However, before analyzing the alleged errors, we will briefly discuss the evidence that defendant specifically challenges.

To demonstrate that the jury could reasonably have concluded that defendant was not negligent or that plaintiff was contributorily negligent, Yellow Cab enumerates several inconsistencies in plaintiff's testimony

regarding the speed he was travelling on his bicycle, the direction he was looking, and how far the cab had proceeded down the driveway when he first saw it. In plaintiff's deposition he stated he was travelling about ten miles per hour. At trial, however, he estimated his speed at five miles per hour. (He also stated his bicycle had no odometer.) Kaufbusch testified that he believed plaintiff was travelling at one or two miles per hour.

We find that these variances in plaintiff's speed have limited, if any, significance. The jury was free to consider all three estimates and to conclude that plaintiff's speed was not unreasonable. Thus, we cannot say that this conflict in the testimony is significant or destructive of plaintiff's credibility.

Another inconsistency that defendant emphasizes concerns the direction in which plaintiff was looking just before the occurrence. In his deposition plaintiff stated, "I was looking with, I think, my head kind of turned to the right." At trial he testified that he was looking straight ahead. Defendant implies that the jury could infer from this "self-impeachment" that plaintiff had failed to use due care because he could not state exactly where he was looking before the accident occurred. We find this contention unpersuasive also. The jury could reasonably assume that plaintiff would look both to the right and straight ahead during the seconds preceding the collision. In fact, plaintiff testified at trial that he looked to his right (where the garage entrance was located) when he was about 10 feet from the garage entrance and saw the cab emerge. We therefore reject the implication that plaintiff's testimony seriously undermined his credibility or indicated his failure to use due care in riding his bicycle.

Similarly, we find only the slightest significance in plaintiff's apparent inability to pinpoint exactly how far the cab had travelled out of the garage when he first saw it. He testified at trial that half or three-quarters of the cab had emerged from the garage when he first noticed it. Defendant points out his prior "inconsistent" deposition testimony that when he first saw the cab it was just beginning to emerge. We agree with plaintiff that his failure to recreate the cab's exit from the garage in a "stop-action" manner is of limited probative value.

These minor discrepancies in plaintiff's testimony do not persuade us that the question of liability was particularly close. However, defendant's apparent belief that trial errors will be deemed reversible *only* in "close" cases is unfounded. As we have recently observed, although there may be a correlation between the weight of evidence in a particular case and the perceived magnitude of errors, the determinative question is the overall fairness of the trial proceedings. (*Kolakowski v. Voris* (1981), 94 Ill. App. 3d 404, 418 N.E.2d 1003.) We thus reach the specific allegations of trial error in the case before us.

## A

Defendant first contends that plaintiff's counsel committed reversible error by repeatedly referring to plaintiff's poor financial status. During voir dire plaintiff's counsel asked several prospective jurors if they had reservations about persons who were on public aid or who had not been employed for a period of time. In his opening statement, counsel also mentioned that plaintiff was on public aid at the time of the accident but that, ironically, three days before the accident, plaintiff had applied to start training with Yellow Cab.[2] Further, there was evidence that part of plaintiff's hospital bill had been paid by public aid. Defense counsel objected to these references, unsuccessfully, on relevancy grounds and now urges us to find that counsel's sole purpose in emphasizing plaintiff's poverty was to create sympathy and to imply that the accident further impaired his ability to find employment.

■■ While we agree that references to a party's financial status are generally considered improper (*Palmer v. Emery Transportation Co.* (1970), 130 Ill. App. 2d 125, 268 N.E.2d 238), we do not believe the remarks in the pending case rise to the level of reversible error. Plaintiff asserts that the voir dire references to public aid were necessary because the jurors had lengthy employment backgrounds and might be biased against welfare recipients. Moreover, there were only four questions concerning public aid in 168 transcribed pages of the voir dire proceedings. The tenor of plaintiff's counsel's remarks during his opening statement was to dispel any notion that plaintiff was lazy or unwilling to work. We do not condone counsel's comment, unsupported by the evidence, that plaintiff had planned to work for the cab company. However, in the context of the entire trial we do not believe that this remark, or any of the public aid references, were calculated to appeal to the jury's sympathy or prejudice. See *DiPaolo v. Johnson* (1973), 15 Ill. App. 3d 735, 305 N.E.2d 194.

## B

■■ Defendant also contends that plaintiff's counsel unfairly appealed to the jury's sympathy by exploiting plaintiff's illness, Parkinson's disease. Some effects of the disease were readily evident at the trial, and defendant did not want the jury to believe that these effects were caused by the accident. Therefore, the parties stipulated that the jury be informed that the disease was unrelated to the injuries plaintiff sustained when he collided with the cab. Defendant argues, however, that plaintiff's counsel overemphasized the disease and consequently committed prejudicial error. We disagree.

---

[2] Apparently, plaintiff's counsel failed to elicit testimony to show that plaintiff was to begin training with the cab company. The record reveals, however, that plaintiff apprised defendant of his planned employment in an answer to defendant's interrogatories dated May 15, 1975.

Plaintiff's counsel informed the jury, during opening remarks, that the disease was "in the blood" and that plaintiff's mother had died from it. He also stated that the disease had nothing to do with the accident. We believe these remarks were acceptable because they indicate that the disease is hereditary and could not have been caused or aggravated by defendant's negligence. Other references to the disease included the comment that but for the accident plaintiff would have been able to enjoy life up to the time when Parkinson's disease "ripped him." During closing arguments, plaintiff's counsel told the jury that "Robert Brandel stuttered and stammered his way through the true facts of this case, despite time and Parkinson's and everything the Yellow Cab Company could do or avoid doing." Also, counsel remarked that plaintiff suffered from his broken hip "all that time, before nature finally caused him to suffer from Parkinson's disease."

Defendant's counsel did not object to the above remarks and thus has not preserved these alleged errors for appeal. Nevertheless, defendant argues that it was severely prejudiced by these and the other improper remarks to the point of losing its right to a fair trial. We find this argument to be disingenuous, however; defense counsel himself made extended inquiries into the nature and effects of the illness and suggested to the jury that the disease might have contributed to plaintiff's fall from his bicycle. Defense counsel asked whether the disease affected plaintiff's speech, what kind of medication he was taking and whether he had ever taken "L-Dopa." In closing arguments, moreover, defense counsel told the jury, "We are hampered by what Mr. Brandel told us because at the present time, his condition of Parkinson's disease has advanced to a stage where his speaking is affected, his neck muscles are affected, and his arms. * * * Mr. Brandel admits at the deposition back in 1975, when his mind wasn't in the position it is now because of his illness * * *."

Such remarks are indicative of defense counsel's own tactics involving the disease. His comments can be construed as an attempt to weaken plaintiff's credibility at trial. Both attorneys referred to plaintiff's illness and were accorded substantial latitude in their conduct at trial. We conclude that defendant was not prejudiced by the references to Parkinson's disease.

## C

Defendant next contends that plaintiff's counsel attempted to inflame the jury by insinuating that defendant and Officer Chiavole conspired to conceal evidence. Plaintiff questioned the failure of the cab company and Chiavole to find the license number of the cab and its driver. Plaintiff's counsel argued that they "tried to hide the truth" because they "never expected this case to come to trial." He further argued that when the cab

company's investigator offered to take care of any problems in return for Kaufbusch's signature on the allegedly inaccurate statement "it was the beginning of what has continuously been a cover-up by the cab company as to what actually happened that day."

■■ Defendant urges us to find these remarks reversible error because they were not based on the evidence and served only to inflame the jury. Although defense counsel did not object to the "cover-up" remarks at trial, defendant cites authorities in which reviewing courts have allowed parties to raise errors on appeal despite their failure to object at trial. (See *Manninger v. Chicago & Northwestern Transportation Co.* (1978), 64 Ill. App. 3d 719, 381 N.E.2d 383.) Defendant admits, however, that counsel's arguments in *Manninger* were more extreme than those in the pending case. Additionally, the court in *Manninger* found other reversible errors, apart from the remarks of counsel. In the instant case, we believe it is appropriate to apply the waiver principle. Further, we note that defense counsel invited some of the comments. He told the jury that Chiavole was "not the best witness in the world," that he did not have control over the witnesses, and that a "Rhodes Scholar" would have been preferable. He went on to ask, "Is [plaintiff's counsel] saying that Officer Chiavole *lied* because he is in *cahoots* with the cab company?" (Emphasis added.) Finally, he told the jury that if they believe the officer lied and that he filed a superfluous and erroneous report, they should "by all means, come to that conclusion." It was in rebuttal that plaintiff's counsel accepted the invitation to comment that it was "not beyond the possibility that the police officer's report was falsified, that he was in 'cahoots' with the cab company."

In light of the waiver and defense counsel's own remarks, we need not discuss the specific evidence from which plaintiff's counsel inferred a possible cover-up. We emphasize, however, that the remarks in question did not deprive defendant of a fair trial.

## D

Next, defendant maintains that plaintiff's counsel misled the jury by incorrectly describing the burden of proof; by telling the jury that plaintiff did not receive a ticket for riding his bicycle on the sidewalk; and by rhetorically asking the jury what would have happened if instead of plaintiff, a child had been running down the sidewalk when the cab emerged without warning.

■■ We find these contentions to be meritless. In two instances, when plaintiff's counsel began to describe the burden of proof, the court sustained defendant's objections. We believe that any potential harm from those comments was therefore cured. (See *McKasson v. Zimmer Manu-*

*facturing Co.* (1973), 12 Ill. App. 3d 429, 440, 299 N.E.2d 38, 46.) Moreover, the trial court properly instructed the jury as to the burden of proof; the jury is presumed to have followed proper instructions. *Carlson v. Dorsey Trailers, Inc.* (1977), 50 Ill. App. 3d 748, 365 N.E.2d 1065.

■■ Regarding the comment that plaintiff was not given a ticket for riding on the sidewalk, defendant argues that such a remark could have led the jury to conclude that Officer Chiavole did not consider the ordinance violation to be important. This inference would thus prejudice defendant by minimizing plaintiff's contributory negligence. To support this contention, defendant relies on *Giles v. Keunnen* (1964), 50 Ill. App. 2d 389, 200 N.E.2d 143. In *Giles,* a police officer testified that he had not arrested the defendant driver of an automobile, following its collision with a child on a bicycle. Defense counsel, in closing arguments, emphasized the officer's experience and qualifications, implying to the jury that the officer had not believed the driver had driven negligently. The appellate court reversed the judgment for defendant on the grounds that the minor plaintiff had not received a fair trial. In discussing the various errors, the court noted that whether or not the officer arrested defendant was immaterial to the tort action and that the officer's indirect "opinion" that defendant was not negligent infringed upon the jury's responsibility to determine the ultimate fact issues.

In the pending case, we first note that defendant's objection to the comment was sustained and the jury told to disregard it. Although defendant argues that the prejudicial impact of the remark could not be cured by the court's instruction, we cannot agree. It is not disputed that plaintiff rode his bicycle on the sidewalk in violation of the ordinance. The jury was instructed as to the existence and effect of the ordinance. The jury's responsibility was to consider all the circumstances surrounding plaintiff's conduct, including his testimony that he was concerned with the amount of street traffic when he decided to ride on the sidewalk. We conclude that the single reference to the police officer's failure to ticket plaintiff is not reversible error.

■■ Defendant further argues that plaintiff's counsel attempted to arouse the jury's anger by asking, "What if [the plaintiff were] a child running down the sidewalk or a youngster roller-skating or somebody even on a tricycle?" While this query might not be entirely proper we do not find it to be reversible error. Nor do we agree with defendant that this remark could have misled the jury as to the proper standard of care. The issue central to defendant's liability is whether the cab driver exercised due care when leaving the garage and entering the sidewalk. Such a duty would presumably extend equally to third parties, whether they were children on rollerskates or adults on bicycles. We do not believe that the jury was misled by this remark.

## E

Defendant concludes its recital of alleged trial errors by contending that the errors had a prejudicial, "cumulative" impact on the trial proceedings. While in some instances courts have recognized that errors may "combine" to necessitate a new trial (*Champion v. Knasiak* (1974), 25 Ill. App. 3d 192, 200, 323 N.E.2d 62, 69 (errors were committed which "in their totality" denied defendants a fair trial)), we do not find the errors in the pending case to be substantial, either individually or in combination. As we have discussed, some of the purported errors are unfounded, some have been waived, and the rest are harmless in impact. Moreover, defense counsel engaged in arguments similar to those of plaintiff's. We have often recognized that the scope of permissible remarks may be wider when made in response to the remarks of opposing counsel, and that in arguing conclusions to the jury, counsel should be accorded broad latitude. (*Patur v. Aetna Life & Casualty* (1980), 90 Ill. App. 3d 464, 413 N.E.2d 65.) We conclude that plaintiff's conduct did not deprive defendant of a fair trial. Accordingly, we hold that the trial court did not abuse its discretion in denying defendant's motion for a new trial.

## II

Defendant next challenges plaintiff's proximate cause jury instruction which provided in pertinent part:

> "The plaintiff claims he was injured and sustained damages while exercising ordinary care and that the defendant was negligent in one or more of the following respects:
> (a) In failing to keep proper lookout for the plaintiff;
> (b) In failing to sound a horn or give other warning before exiting said garage;
> (c) In failing to have proper and sufficient control over said taxicab;
> (d) Caused said taxicab to emerge from the garage at a time when it was not reasonably safe to do so;
> (e) In exiting from said garage and not yielding the right of way to the plaintiff. * * *" (I.P.I. Civil No. 20.01.)

At the conference on jury instructions, defendant objected to paragraphs b, c, d, and e on the ground that there was nothing in the evidence to support them. On this appeal, however, defendant only objects to paragraph e, arguing that there is no *statute* in Illinois which grants plaintiff such a "right of way." Defendant further argues that the instruction is prejudicial because it tended to obscure the legal effect of the city ordinance that prohibits bicycle riding on sidewalks. We reject both contentions.

■■ ■ First, we note that defense counsel did not specifically raise this

challenge to paragraph e of the instruction during the jury instruction conference. Supreme Court Rule 239(b) requires the grounds of objections to jury instructions be particularly specified. (Ill. Rev. Stat. 1977, ch. 110A, par. 239(b).) Without this specificity the trial court is deprived of the opportunity to correct possible error. (*Finfrock v. Eaton Asphalt Co.* (1976), 41 Ill. App. 3d 1020, 355 N.E.2d 214.) Assuming defendant's general objection was sufficient, however, we are not persuaded that the instruction is erroneous. The phrase "right of way" does not necessarily imply the existence of a statutory right, as defendant contends. The instruction does not mention a statute and the phrase itself, we believe, could reasonably be construed as referring to a common law duty of due care. Consistent with this reasoning, we reject defendant's related objection that the challenged instruction somehow negated the legal effect of the city ordinance that proscribes bicycle riding on sidewalks. Illinois law does not automatically equate a party's violation of a statute or ordinance with negligence "as a matter of law." Such a violation is one factor to be considered along with all other circumstances in evidence. (*Davis v. Marathon Oil Co.* (1976), 64 Ill. 2d 380, 390, 356 N.E.2d 93, 97.) In the pending case, the jury was instructed to that effect. We will not assume the jury was unable to properly evaluate the conduct of both parties. From the record it is clear that defense counsel wanted the jury to believe that plaintiff's bicycle riding on the sidewalk in violation of the ordinance was overwhelming, if not conclusive, evidence of plaintiff's contributory negligence. Plaintiff's counsel, naturally enough, minimized the importance of the ordinance, telling the jury to consider *how* he rode his bicycle on the sidewalk, not whether he did. The trial court, however, properly instructed the jury on the effect of the ordinance violation and on the meaning of contributory negligence. We presume that the jury followed the court's instructions.

### III

Defendant's final argument is that the damages award is so "grossly excessive" that it must be considered punitive. Consequently, defendant contends, the $150,000 verdict must be reduced or the judgment must be reversed and the cause remanded for a new trial.

We have closely examined the record and analyzed defendant's exhaustive list of purported errors. We reiterate that we do not believe the jury's verdict was based on passion or prejudice. Therefore, we reject defendant's characterization of the damages award as "punitive." Nevertheless, in reviewing the evidence of plaintiff's damages, we conclude that it would be proper in this case to limit the award to the amount plaintiff requested in his complaint: $100,000.

Plaintiff introduced evidence on three elements of damages: (1) the

nature, extent, and duration of the injury; (2) his disability; and (3) his pain and suffering. Regarding the first element, the evidence indicates plaintiff underwent surgery for a broken hip and incurred hospital expenses in the approximate amount of $2,800. He was confined to bed for about three weeks after surgery, underwent physical therapy and used crutches for six months. The evidence also indicated that plaintiff subsequently suffered from arthritis as a result of his hip fracture and may require a total hip replacement in the future. Regarding the second element of damages, plaintiff's disability, there is no direct indication that plaintiff's injuries preclude him from finding employment or restrict him from normal activities. On the third element of damages, plaintiff testified that he continues to experience pain in his hip.

■■ While we do not wish to minimize plaintiff's pain, we believe the award in this case is beyond the "flexible range of what is reasonably supported by the facts, * * *." (See *House v. Stocker* (1975), 34 Ill. App. 3d 740, 746, 340 N.E.2d 563, 568.) We have often recognized that the calculation of damages in personal injury cases is not mathematically precise. (*Ball v. Continental Southern Lines, Inc.* (1977), 45 Ill. App. 3d 827, 360 N.E.2d 81.) However, we believe that in this case it is appropriate to limit plaintiff to the $100,000 damages requested in his complaint. Pursuant to Supreme Court Rule 366(a)(5) (Ill. Rev. Stat. 1979, ch. 110A, par. 366(a)(5)), we order that the cause be remanded to the trial court for the filing of a remittitur of $50,000. The resulting damages award of $100,000 will then be affirmed; otherwise, the award will be reversed and a new trial on damages only will be ordered. See *Slater v. Jacobs* (1977), 56 Ill. App. 3d 636, 643, 371 N.E.2d 1054, 1059; *Rivenbark v. Finis P. Ernest, Inc.* (1976), 37 Ill. App. 3d 536, 541, 346 N.E.2d 494, 499; *DeMilio v. Schnoor* (1967), 84 Ill. App. 2d 250, 228 N.E.2d 146 (abstract); *cf. Blyzes v. Midwest Towing Co.* (1969), 109 Ill. App. 2d 48, 248 N.E.2d 305.

For the foregoing reasons, we affirm the judgment in favor of plaintiff on the issue of liability. We affirm the judgment as to damages on condition that plaintiff enter a remittitur of $50,000 within 30 days from the filing of this opinion; otherwise the judgment as to damages is reversed and the cause remanded for a new trial as to damages only.

Affirmed as to liability; affirmed as to damages upon remittitur, otherwise reversed and remanded for a new trial as to damages only.

MEJDA and LORENZ, JJ., concur.