**Leonard Krantz, Plaintiff-Appellant, v. Albert O'Neil, Defendant-Appellee.**

**Gen. No. 52,201.**

First District, First Division.

July 29, 1968.

Leonard R. Grazian, of Chicago, for appellant.

Raymond F. Simon, Corporation Counsel of City of Chicago, of Chicago (Marvin E. Aspen and Stuart Sikevitz, Assistant Corporation Counsel, of counsel), for appellee.

MR. JUSTICE MURPHY delivered the opinion of the court.

Plaintiff appeals from a verdict and judgment in favor of defendant, Albert O'Neil, a Chicago police officer, in plaintiff's action for personal injuries caused by the shooting of plaintiff by defendant while on duty. Plaintiff asserts trial errors and improper instruction of the jury.

On April 8, 1959, at about 10:45 a. m., Edward Przybylski, a cigar salesman, parked his car in front of a tobacco shop in Chicago and called his office to report he was being followed by three men in a 1958 Chevrolet. The

defendant and Howard Rauhut, two plainclothes Chicago police officers, were dispatched to join Przybylski at the tobacco shop. From the shop defendant observed and recognized the plaintiff and his two companions, Edward Orlowski and John Kolman, parked nearby in a Chevrolet. Kolman left the car and walked down the street, where he stopped to examine and meddle with the automobile of Przybylski. When defendant stepped from the store to join Rauhut in an unmarked car, the Chevrolet's horn sounded, and Kolman rejoined the two men in the car. The Chevrolet then executed a U-turn, and the three men drove away, pursued by defendant and Rauhut. In the course of the chase, and after firing two warning shots in the air, defendant fired several shots at the Chevrolet. A final shot struck plaintiff in the head, leaving him permanently blinded. Plaintiff sued both police officers. At the trial the court allowed a motion for a directed verdict of not guilty as to Rauhut, and the jury returned a verdict of not guilty as to O'Neil. Plaintiff appeals from the O'Neil verdict only.

The contentions of plaintiff on appeal include: 1. The jury was improperly instructed. 2. Improperly admitted into evidence were: (1) the details of plaintiff's previous burglary conviction; (2) a transcript of plaintiff's previous burglary conviction; (3) testimony concerning a prior arrest and incarceration of the plaintiff; (4) photographs of items confiscated from plaintiff on a previous arrest; (5) police department records; (6) keys, lock picks and tools; and (7) testimony relating to the Chicago police department's regulations for the use of firearms.

Plaintiff, Leonard Krantz, testified that on April 8, 1959, at about 9:00 a. m., he, Orlowski and Kolman drove to plaintiff's home at 4417 North Canfield in Orlowski's automobile, a 1958 Chevrolet, where they made some measurements for the installation of a canopy.

They then left for Western and Homer, where plaintiff and Kolman intended to do some work on a building owned by plaintiff. At Irving Park and Parkside, Orlowski stopped the car, and Kolman got out and walked east to a drugstore. After a few minutes Kolman returned to the car. Orlowski then turned left, and the three men drove north on Parkside back toward plaintiff's home. After going about two blocks north, plaintiff heard the roar of an engine and the sound of a gunshot. He turned around and saw that the rear window was shattered. He also saw two men wearing ordinary clothing and driving a 1955 Plymouth, which was without distinctive markings, mars light or siren. One of the men had a gun in his hand. After the first shot was fired, Orlowski accelerated from the twenty or twenty-five miles-per-hour speed at which he had been driving. About three-fourths of a block after the first shot, the Chevrolet in which plaintiff rode slowed down, and another shot was fired at it. It seemed that each time Orlowski slowed down, another shot would be fired. No gunfire was returned from the car in which the plaintiff rode, and the plaintiff was unarmed. When Orlowski slowed for a stop at Austin and Cullom, plaintiff raised up from the front seat where he had taken shelter from the gunfire. He faced the approaching car, from which the gunfire had come, with his hands up in the air. He saw a flash come from the gun and heard the sound of a shot. Then everything turned white and then black. Since that time he has been permanently blinded.

On cross-examination, plaintiff testified concerning a 1956 burglary indictment, to which he and Kolman pleaded guilty, and plaintiff was placed on probation.

Defendant and Howard Rauhut were called by the plaintiff as adverse witnesses.

Frank Walker, plaintiff's final witness, testified that at the time of the occurrence he was driving south on

Austin near Cullom. He saw the '58 Chevrolet at the corner moving at less than fifteen miles per hour. At about the same time as he saw the car, he heard a shot. As the Chevrolet entered Austin, a Plymouth pulled around it. On the passenger side of the Plymouth he saw an arm and a gun. The Plymouth took a wide turn into Austin, and both vehicles came to a stop.

The first defense witness was Edward Przybylski, a cigar salesman, who lived in Harwood Heights in April 1959. He testified that on the morning of April 8, 1959, he was making deliveries and had cigars and sundries in his car worth about $500. He made a call in Melrose Park, where he observed three men in a '58 Chevrolet following him. He recognized plaintiff as one of the men, because a year earlier he had been followed by plaintiff, and he had called for the assistance of the Harwood Heights police. Przybylski then drove to a tobacco shop at 5616 Irving Park, Chicago, where he parked his car. Inside the shop he called his office and reported that he was being followed. He stayed in the shop across the street from his car for about twenty minutes. Defendant and Rauhut entered the tobacco shop through the back door. He told them about the men in the car which had followed him from Melrose Park. He pointed out the '58 Chevrolet as it passed the shop going west on Irving Park. Przybylski then left the shop and walked to a nearby drugstore. He then returned to his car and found it just as he had left it, and there were no marks on it.

The defendant testified that on April 8, 1959, at about 10:30 a. m., he and Officer Rauhut were assigned to investigate suspicious men following a tobacco salesman by the name of Przybylski. They drove to the tobacco shop at 5616 Irving Park Road in a marked police car. Przybylski then told him of the men in the '58 Chevrolet and pointed out the car and stated that he had caused the plaintiff to be arrested about a year earlier. The defend-

185

ant recognized the three men. He had seen Kolman and the plaintiff while they were held at the 33rd District police station about a year previous to the occurrence.

Defendant further testified that Rauhut returned to the police station for an unmarked car. While Rauhut was gone, he told Przybylski to make a call on the southwest corner of Irving Park and Central. After Przybylski left, defendant saw the Chevrolet park on the south side of Irving Park at Parkside. Kolman left the Chevrolet and walked east to Przybylski's car. He carried a shiny object in his hand. He bent over the right front fender and then straightened up and put his hands on the right front vent window. At this time defendant stated he walked from the tobacco shop toward Rauhut, who had returned with an unmarked car. While defendant was walking toward Rauhut he heard Orlowski blow the horn in the Chevrolet, and Kolman returned to the car. The Chevrolet made a U-turn and drove north on Parkside.

Defendant stated that he and Rauhut followed in the unmarked car and drew abreast of the Chevrolet within a block. With his left hand defendant showed his police star, and "I told them to halt, that we were police officers. I held it right out of the window. They were five feet away from me. Their windows were open, and our windows were open. . . . They then accelerated . . . ." In the 4200 block on Parkside, as defendant and Rauhut again drew abreast, the Chevrolet forced them over the curb and again accelerated. At this point defendant fired two warning shots in the air. The vehicle turned left on Cullom and proceeded to speed up to 60 and 70 miles per hour. Between Austin and Parkside defendant fired more shots. As both cars continued down Cullom, he saw plaintiff throwing objects out of the right front window of the car. When defendant fired the second shot, plaintiff picked up a metal object somewhere from below defendant's line of vision and had it in his hand. After-

186

wards, defendant found it on the street, and it was a ratchet (identified as defendant's exhibit 7). Other items picked up at the same time were lock picks, tools and other articles, all of which were inventoried by the police.

On cross-examination, defendant stated that when Kolman got out of the car, plaintiff remained in the car talking with Orlowski. He could not identify the object which Kolman had in his hand when he went to the Przybylski automobile. His vision was obstructed at the time that Kolman stood near the alarm on Przybylski's car so he had been unable to see what Kolman did with his hands. At the time that Kolman put his hands to the vent window, defendant did not know where the shiny object was. He also stated that he fired four shots at the car in which plaintiff was riding. No gunfire was returned from the car in which the plaintiff rode, and plaintiff was found to be unarmed.

Officer Howard Rauhut substantially corroborated defendant's testimony. He testified that he drove abreast of the Chevrolet in the 4200 block of Parkside. As the officers identified themselves as policemen, plaintiff bent over in the front seat and brought up from the floor a shiny object which looked like a pistol barrel. When Rauhut's car again came abreast the plaintiff's automobile and defendant ordered the men to pull over, the Chevrolet forced him from the road onto the curb. Rauhut stated that he later recovered from the Orlowski automobile a briefcase containing various tools, including a lock puller, lock picks, keys, an ignition switch and tinfoil.

Defense witness Edward L. Miller, a Chicago police officer, identified police records consisting of a "station complaint book" and a "recovered property inventory book." These were books of original entries kept in the ordinary course of police business. Police Sergeant Petz, who made the entries, was dead. Over objection, pertinent portions of the books were received in evidence.

187

The complaint book showed a "Station Complaint" on April 8, 1959, by telephone at 10:43 a. m., that "Three men in auto following tobacco truck 5616 Irving Pk." Officers assigned were O'Neil and Rauhut. The inventory book showed entries on April 8, 1959, of physical objects "Found or Recovered From Street" at 5700 Cullom, with "Leonard Krantz" named as owner; also, physical objects recovered from "1958 Chevrolet," with "Edw. Orlowski, John Kolman, Leonard Krantz" listed as owners.

Other witnesses for the defense included: (1) A Police Captain who testified that police regulations authorized the use of firearms in defense of a policeman's life or in pursuit of a fleeing felon. (2) A Police Captain who testified as to his experience and knowledge of "paraphernalia and tools" that are used by persons involved in burglaries and explained the use of the various defense exhibits which had been found in the automobile of plaintiff. (3) A Lieutenant of Police from Harwood Heights who testified that he arrested plaintiff on July 3, 1958, and confiscated a number of items found in plaintiff's car. Over objection, the court admitted into evidence two photographs of items taken from plaintiff at that time. (4) A man who was cutting grass at 5704 Cullom. He saw a car coming along at full speed, and there was no traffic in the street. There was another car about three-quarters of a block behind it "going on 55 to 60 miles an hour," and he did not see the first car slow down at any time. (5) A Cook County Probation Officer who testified that defendant was on probation on April 8, 1959.

The defense introduced into evidence, over objection, the articles recovered from the street and from the automobile in which plaintiff was riding, the police complaint book and recovered property inventory book; also, a certified transcript of plaintiff's 1956 felony conviction.

Considered first is plaintiff's contention that the jury was improperly instructed. Plaintiff states that at the time of the occurrence (1959), there were no Illinois cases or statutes which covered the right of a police officer to use deadly force on a person who has committed or attempted a "forcible felony" as now defined in the "Criminal Code of 1961," chapter 38, article 7-5 (Peace Officer's Use of Force in Making Arrest). Therefore, and with the use of available pertinent authorities, plaintiff drafted instructions 6 and 7 on the issue of the use of force by a police officer in making an arrest of a person, which were refused by the court.

On this issue, the court gave defendant's instruction 16, which stated:

> "A police officer may use deadly force or force that is likely to inflict great bodily harm on a person in order to arrest a person whom he is pursuing and whom he has reasonable grounds for believing has committed a felony."

The court also gave "Court's Instruction #1," which stated:

> "If any officer, in the execution of his office, in a criminal case, having legal process, be resisted and assaulted, he shall be justified if he kill the assailant. If an officer or private person attempt to take a person charged with treason, murder, rape, burglary, robbery, arson, perjury, forgery, counterfeiting or other felony, and he be resisted in the endeavor to take the person accused, and, to prevent the escape of the accused, by reason of such resistance, he be killed, the officer or private person so killing shall be justified: Provided, that such officer or private person, previous to such killing, shall have used all reasonable efforts to take the accused without success, and that from all probability there was no prospect of being able to prevent injury from such

resistance, and the consequent escape of such accused person."

Plaintiff argues that defendant's instruction 16 was erroneous because it omits an important element "that . . . the arrest cannot otherwise be effected . . . ," and that the court's instruction 1 was confusing and injected issues into the case that did not exist and which were not "borne out by the evidence adduced." Plaintiff asserts that "legal process" signifies a warrant for arrest, and also "O'Neil did not use deadly force in self-defense to '. . . prevent injury from such resistance.'"

Plaintiff also complains of the giving of defendant's instruction 9, which stated:

"On April 8, 1959, there was in effect a Statute of the State of Illinois, which provided as follows:

"When the fact that a felony has been committed shall come to the knowledge of any sheriff, coroner or constable, fresh pursuit shall be forthwith made after every person guilty thereof, by such sheriff, coroner, constable and all other persons who shall be by any one of them commanded or summoned for that purpose; every such officer who shall not do his duty in the premises shall be punished by fine in a sum not exceeding $100, or imprisoned not exceeding three months."

Plaintiff argues that instruction 9 has no bearing on the issues of the case because the criminal penalty for nonfeasance by a police officer was not in issue here, and the instruction could only tend to confuse and mislead the jury.

In our opinion, it is difficult to fairly instruct a jury in "understandable, unslanted and accurate" language which a layman can understand in the very sensitive area of when a police officer, in the line of duty, may

use deadly force, especially in hot pursuit, when split-second decisions are required.

It is obvious that the court's instruction 1 was taken verbatim from paragraph 368 of chapter 38, Ill Rev Stats 1959, which dealt with justifiable homicide "by an officer resisted." Defendant argues that parts of it were beneficial to plaintiff, in that "since there was no evidence at all in the case of any 'assault' upon the Defendant police officer, it would have been quite impossible for the jury to determine, on the sole basis of this first sentence of Court's Instruction No. 1, that the Defendant was justified in his use of deadly force. Consequently, a verdict based upon the first sentence would have resulted in a judgment for Plaintiff."

██ Generally, an instruction in the language of a statute is proper where it is not misleading and is pertinent to the issues in the case (35 ILP, Trial, § 196). Although the issues here may not have fully warranted the giving of the court's instruction 1 and defendant's instruction 9, we do not believe they were prejudicial to plaintiff or that they confused or misled the jury.

██ We find no error in the court's refusal of plaintiff's instructions 6 and 7, although either instruction might have been given with propriety. The giving of defendant's instruction 16 was proper, and we agree with defendant that instruction 16 and the court's instruction 1 substantially cover the elements contained in plaintiff's instructions 6 and 7.

In sum, we have examined all of the instructions that were given to the jury in this case, and we find that the jury was adequately instructed as to the issues, and without prejudice to plaintiff.

Considered next is plaintiff's contention that the court committed error in the admission of evidence concerning plaintiff's prior conviction of the felony of burglary. Plaintiff points out that on cross-examination he readily

admitted to the prior conviction, and that it was improper to inquire into the surrounding circumstances and to admit into evidence a certified transcript of defendant's conviction, which contained the particulars of the offense, after plaintiff had already admitted the conviction.

 In a civil case, the credibility of a witness or a party may be attacked by showing that the witness or party has been convicted of an infamous crime, and one of the methods of proving the conviction is by the witness himself. In the event of denial, the conviction may be proven by other witnesses cognizant of such conviction or by any other competent evidence. It is not necessary to prove the conviction by the record itself. Proof of previous conviction for an infamous crime is allowed to be shown for no other purpose than to affect the credibility of the witness. There is no statutory limitation as to the time of such previous conviction. Bezark v. Kostner Manor, Inc., 29 Ill App2d 106, 114, 172 NE2d 424 (1961).

 We have examined the cross-examination of plaintiff on his burglary conviction in 1956, his probation for that offense, and the involvement of Kolman in the 1956 conviction. We believe the latitude allowed in this area of the cross-examination was proper and relevant. Also, it was not improper to permit plaintiff's probation officer to testify that plaintiff was still on probation on April 8, 1959, because plaintiff had testified otherwise.

 In view of the foregoing cross-examination of plaintiff concerning his burglary conviction, it was unnecessary to admit the transcript of the conviction. However, we do not consider that its admission prejudiced the plaintiff.

 Plaintiff next asserts that it was improper to permit defendant to testify that he had seen Kolman and the plaintiff while they were held at the 33rd District

police station about a year previous to April 8, 1959. We do not agree. This explained why defendant recognized plaintiff as one of the men in the Chevrolet and buttressed defendant's use of a deadly weapon in his attempt to arrest plaintiff.

 Plaintiff also contends that there was error in the admission of testimony relating to plaintiff's arrest in Harwood Heights some nine months previous to the incident with which this case is concerned. We do not agree. This testimony explained the alarm which Przybylski experienced when he noticed that he was being followed and which he communicated to the defendant upon their meeting at the tobacco shop. Although we think it was improper to admit the photographs of the equipment which was taken from plaintiff on that arrest, we find no prejudice to plaintiff.

 Plaintiff further contends that the police complaint book and the recovered property inventory book were hearsay and should not have been admitted into evidence. It may be argued that it was within the court's discretion, with the exercise of caution, to have admitted these records, either on the ground that they were official records kept by the police in the performance of their duties (People ex rel. Wenzel v. Chicago & N. W. R. Co., 28 Ill2d 205, 211, 190 NE2d 780 (1963)), or as extrajudicial statements not involving the truth of the statements offered. (Shelton v. Barry, 328 Ill App 497, 509–511, 66 NE2d 697 (1946)). Nevertheless, we find no reason to have admitted these records here because, without contradiction, defendant testified as to his assignment and the recovery of the articles found on the street after the pursuit, and Rauhut testified as to the articles found in the Chevrolet. However, we find no prejudice to plaintiff.

 Finally, we find no error in admitting into evidence the keys, lock picks, tools and ignition locks which were found on the street and in the Chevrolet.

There was testimony which directly connected plaintiff with these exhibits. Also, we find no error in admitting the testimony of the Police Captains as to police regulations regarding the use of firearms in the pursuit of a fleeing felon and the use of the various defense exhibits by persons involved in burglaries.

In conclusion, a review of the records shows that plaintiff was permitted liberal direct examination and cross-examination in all vital areas. The issues were not complex, and plaintiff was given a fair trial. The evidence established that defendant was acting in the line of duty in his attempt to arrest plaintiff, whom he recognized and believed to be guilty of participation in an attempt to commit a felony. It is our opinion that the questioned evidence could not have misled or confused the jury.

For the reasons given, the judgment of the trial court is affirmed.

Affirmed.

BURMAN, P. J. and ADESKO, J., concur.