STEVEN R. ZUECK, Plaintiff-Appellee and Cross-Appellant, v. THE CITY OF NOKOMIS, Defendant-Appellant and Cross-Appellee.

Fifth District   No. 5—86—0348

Opinion filed August 24, 1987.

Alfred B. LaBarre, of Ensel, Jones, Blanchard & LaBarre, of Springfield, for appellant.

Leahy Law Offices, of Springfield (Mary Lee Leahy, of counsel), for appellee.

JUSTICE WELCH delivered the opinion of the court:

Plaintiff Steven R. Zueck, a full-time police officer, commenced this action under 42 U.S.C. sec. 1983 *et seq.* (1981) for discharge from his employment by defendant City of Nokomis in violation of his rights under the fourteenth amendment to the constitution of the United States (U. S. Const., amend. XIV). Plaintiff's complaint also named as defendants Nokomis city councilmen Mary Lou Spengel, David Dirks and Donald Petty, Mayor Ted Durbin, and Chief of Police William Harris. The circuit court of Montgomery County entered judgment on a jury verdict of $69,500 in plaintiff's favor against the city. The city appeals the judgment. Plaintiff cross-appeals regarding the dismissal of a portion of his complaint.

The councilmen testified at the jury trial, as did plaintiff, Harris and Durbin. The pertinent evidence at trial was as follows: In the several months of 1982 preceding August of 1982, a married citizen phoned the police department approximately 100 times regarding broken windows and prowlers at her home. The police department frequently dispatched plaintiff to the citizen's residence on these mat-

ters. Plaintiff discussed with Harris and Durbin whether plaintiff should continue responding to these calls. Harris and Durbin testified they questioned plaintiff in late July or early August of 1982 when they "heard" plaintiff was having an affair with the citizen, and that plaintiff told them what they "heard" was not true. Plaintiff was not questioned at trial regarding this confrontation. In August of 1982 the citizen approached Harris and accused plaintiff of having an affair with her, and the citizen played a cassette tape recording for Harris which Harris described as including plaintiff's voice, a radioed police dispatch and plaintiff's vocal response thereto, and sounds of passion. The citizen retained the recording and later told Harris she destroyed it; no one other than the citizen and Harris heard it. On Harris' request the citizen provided a handwritten statement of her accusations. On Durbin's instructions Harris suspended plaintiff, first orally and two days later in writing, the notice accusing plaintiff of "conduct unbecoming an officer." Plaintiff testified that when Harris orally suspended him, plaintiff asked "what it was," and that Harris replied the citizen, whom Harris named, "had brought in some tapes, incriminating me [the plaintiff] in some way." Kelly Long, plaintiff's attorney, requested a hearing on the charges, and the council met specially.

Proceedings at the meeting were not transcribed, but minutes were taken. Durbin and Long were present. The citizen and Harris were not. The council members read the citizen's statement, and plaintiff denied the citizen's charges and answered the members' questions. Plaintiff testified that at this meeting he saw the citizen's statement for the first time. There is some dispute as to who demanded a polygraph examination, but apparently the council would have voted to dismiss plaintiff at that meeting if plaintiff had not decided to submit to the examination.

The polygraph examiner's written report was equivocal, accused plaintiff of failure to cooperate and characterized plaintiff as evasive on the question of whether plaintiff had a sexual relationship with the citizen. Plaintiff testified he did not receive a copy of the polygraph examiner's report, though he asked for one. Without notice to plaintiff, the council discussed the matter at its next regular meeting and voted to discharge him.

The trial court dismissed all counts of plaintiff's seven-count complaint except counts 5 and 7 and dismissed Harris from the case. The fifth count of the complaint, alleging breach of contract, alleged plaintiff's dismissal was without just cause and without written charges and a hearing as required by his written contract of employment. The seventh count alleged plaintiff was deprived of a protected interest

under the fourteenth amendment without due process of law.

Plaintiff testified he was born and raised in Coalton, one mile from Nokomis; he was married; when he was fired he was earning $8.50 an hour; his starting salary at his next job was $5.25 an hour; he made $6.50 an hour as of the trial; after his discharge he tried to obtain another job in law enforcement but could not; after the discharge he was so embarrassed and ashamed that he would not shop in Nokomis because "everybody knows what everybody does in a small town." The jury returned its verdict in plaintiff's favor itemized as follows: for "violation or deprivation of a constitutional right or rights," $5,000; for past and future mental, emotional and physical stress and suffering, $20,000; for past and future loss of personal and professional reputation, standing and respect, $20,000; for lost salary, pension and health insurance, $24,000; for attorney fees, $450; for moving expenses, $50; the total, $69,500.

The city challenges the judgment on three grounds, (1) that no breach of the employment contract was proved, (2) that plaintiff had no legitimate expectation of continuing employment amounting to a property interest protected under the fourteenth amendment, and (3) that the hearing plaintiff received sufficiently protected his liberty interest under the fourteenth amendment.

We need consider only the first contention. The city properly concedes the jury could have found the reasons for plaintiff's termination affected his reputation and thus his liberty. Typically, when one's liberty interest is allegedly infringed upon by a discharge from employment, the termination either defames by expressly stating stigmatizing factors or contributes to defamation by implicitly ratifying stigmatizing allegations. Either way, the defamed's liberty to engage in any of the common occupations of life is diminished, and the defamation occurs in the course of the termination of employment. If the plaintiff can show the trier of fact the termination caused or enhanced his alleged reputational damage, the plaintiff shows he was entitled to a hearing or other reasonable opportunity to clear his name. (*McGhee v. Draper* (10th Cir. 1981), 639 F.2d 639, 643.) A charge of dishonesty or immorality is the sort of accusation which places the accused's reputation, honor or integrity at stake, regardless of whether the accused possesses a protected property right to continued employment. See *Board of Regents v. Roth* (1972), 408 U.S. 564, 573, 33 L. Ed. 2d 548, 558, 92 S. Ct. 2701, 2707.

Once it is shown that a right to a name-clearing hearing was triggered, the sufficiency of the purported hearing becomes a legal issue. (*McGhee v. Draper* (10th Cir. 1981), 639 F.2d 639.) The city

contends the hearing plaintiff received was a sufficient name-clearing opportunity. Plaintiff contends it was not because he was not sufficiently notified of the charges against him. We agree. Where the constitutional interest affected is liberty rather than property, the purpose of a due process hearing is to provide the person an opportunity to refute the charges and clear his name. (*Williams v. West Jordan City* (10th Cir. 1983), 714 F.2d 1017, 1021.) Purported opportunity to refute charges is no opportunity at all unless the accused knows what charges he must refute. The written notice of suspension delivered to plaintiff prior to his appearance before the council charged him with nothing more specific than conduct unbecoming an officer. Plaintiff's testimony that he first saw the citizen's written statement at the purported hearing is uncontradicted. The sole evidence which the jury arguably might have relied upon as establishing actual notice of the nature of the charges was Durbin's and Harris' testimony that they discussed similar rumors with plaintiff in late July or early August. Even if such a prior confrontation could be deemed adequate notice from which plaintiff should infer the nature of the subsequent charges, the jury was entitled to believe plaintiff's testimony that when he was orally suspended by Harris he had to inquire as to the nature of the accusations against him. In any event, neither Harris nor any other witness testified plaintiff was expressly informed of the nature of the specific accusation to be refuted, at that time or any time before the purported hearing.

■ We conclude that plaintiff sufficiently proved he was deprived of a protected liberty interest without due process of law. Because that conclusion disposes of the contention that there was insufficient evidence to support the judgment against the city, we need not consider whether plaintiff sufficiently proved he was deprived of a protected property interest or whether the city breached the employment contract.

■ The city argues the jury instructions improperly itemized damages to include damages for "violation or deprivation of a constitutional right or rights" in addition to damages for mental, emotional and physical anguish and damages for loss of reputation. The city argues the first of these items was not recoverable in addition to the other two. Compensatory damages are of course recoverable in a section 1983 action. (*Carey v. Piphus* (1978), 435 U.S. 247, 254-55, 55 L. Ed. 2d 252, 259, 98 S. Ct. 1042, 1047-48.) In *Carey v. Piphus* the United States Supreme Court concluded section 1983 was not intended to establish "a deterrent more formidable than that inherent in the award of compensatory damages." (435 U.S. 247, 256-57, 55 L.

Ed. 2d 252, 260, 98 S. Ct. 1042, 1048.) Consistently, in *Lenard v. Argento* (7th Cir. 1983), 699 F.2d 874, 888-89, *cert. denied* (1983), 464 U.S. 815, 78 L. Ed. 2d 84, 104 S. Ct. 69, the court of appeals for the Seventh Federal Circuit held it was error to instruct the jury that a section 1983 plaintiff might recover "substantial damages" as a category distinct from actual or punitive damages flowing from a conspiracy to obstruct justice or a deprivation of equal protection. In the cases cited by plaintiff, compensatory damages either were not or could not be proved. (See, *e.g., Bryant v. McGinnis* (W.D.N.Y. 1978), 463 F. Supp. 373, 388 (awarding "non-punitive damages for the deprivation of intangible rights for which no pecuniary loss can be shown"); *Mickens v. Winston* (E.D. Va. 1978), 462 F. Supp. 910, 913, *aff'd* (4th Cir. 1979), 609 F.2d 508 (award for "presumptive" injury).) We perceive no authority or justification for including damages for violation of constitutional rights as an *additional* element in the judgment. The judgment is reduced by $5,000.

■ The city argues the trial court erred in instructing the jury regarding a violation of the Illinois statute prohibiting eavesdropping. (Ill. Rev. Stat. 1981, ch. 38, par. 14—2.) Plaintiff omits a response to this argument. The jury was told to consider a possible violation of the eavesdropping statute only as to the credibility as a witness of the citizen who complained against plaintiff. In our opinion the statute was a sufficiently relevant consideration upon this point based on the evidence. A party has the right to have the jury instructed on his theory of the case, and the question as to what issues have been raised by the evidence is within the discretion of the trial court. (*Burge v. Morton* (1981), 99 Ill. App. 3d 266, 269, 425 N.E.2d 539, 542.) We find no cause to disturb the judgment based on the giving of this instruction.

■ ■ The city argues the verdict as a whole was excessive. The test of whether a jury verdict is excessive is whether the total amount of the verdict falls within the necessarily flexible limits of fair and reasonable compensation or is so large as to shock the judicial conscience. (*Chapman v. Foggy* (1978), 59 Ill. App. 3d 552, 559-60, 375 N.E.2d 865, 871.) The determination of an adequate verdict is peculiarly within the province of the jury; great weight must be given to the jury's determination, and its results will not be disturbed unless all reasonable persons would agree the amount is excessive. (*Bender v. Consolidated Mink Ranch* (1982), 110 Ill. App. 3d 207, 215-16, 441 N.E.2d 1315, 1322.) The judgment as modified is within the discretion vested in the jury and appropriate in light of plaintiff's evidence of his injuries; we refrain from disturbing it.

In light of the view we have taken of the city's appeal, we need not consider the issues raised in plaintiff's cross-appeal. For the above reasons, the judgment of the circuit court of Montgomery County is modified from $69,500 to $64,500, and the judgment is affirmed as so modified.

Affirmed as modified.

KARNS, P.J., and HARRISON, J., concur.