FRANCES CHAKOS, Plaintiff-Appellee, v. THE ILLINOIS STATE TOLL HIGHWAY AUTHORITY, Defendant-Appellant (Terry Schrimsher, Indiv. and d/b/a Tri-City Towing, *et al.*, Defendants).

First District (2nd Division)   No. 87—1446

Opinion filed May 10, 1988.—Modified on denial of rehearing June 21, 1988.

Kiesler & Berman and Querrey & Harrow, Ltd., both of Chicago (Robert L. Kiesler, R. Howard Jump, Jo M. Bonell, Patty M. Deuel, James J. O'Hagan, Victor J. Piekarski, and Michael Resis, of counsel), for appellant.

Carr & O'Rourke Associates, of Chicago (Donald A. Carr and Roland P. Ernst, of counsel), for appellee.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant Illinois State Toll Highway Authority (ISTHA or Authority) appeals a jury verdict for plaintiff of $9,500,000 as damages sustained by her while a motorcycle passenger on the Northwest Tollway. Other defendants settled for $1,350,000 prior to and during trial. ISTHA seeks review of issues as to whether: (1) ISTHA owed plaintiff the duty to itself police the tollway and enforce State traffic laws, rules and regulations or could lawfully delegate those duties to others; (2) the jury was improperly instructed that it was ISTHA's duty to eliminate existing traffic hazards and prevent injuries on the tollway; (3) the jury should have been instructed that ISTHA was liable only for conditions it knew or should have known existed; (4) improper remarks in plaintiff's closing argument denied defendant a fair trial; (5) ISTHA should have been granted relief for a codefendant's failure to appear at trial; (6) a prior inconsistent statement by an employee of the codefendant was improperly excluded; (7) the jury verdict on damages was excessive; and (8) admission of a certain plaintiff's exhibit constituted error. For reasons articulated below we reverse and remand for a new trial.

The legislative preamble creating ISTHA declares that it is in the public interest (Ill. Rev. Stat. 1981, ch. 121, par. 100—1) "to eliminate existing traffic hazards, and to prevent automotive injuries and fatalities." Toward that end, the Illinois Department of Law Enforcement was authorized to enter into contracts with ISTHA obligating State Police to patrol toll highways at ISTHA's expense. (Ill. Rev. Stat. 1981, ch. 121, par. 307.18a.) Such an agreement was concluded on March 29, 1979, and the State Police thereafter patrolled the tollroads. Lists of tollway tow truck operators are compiled by State Police, but require approval by ISTHA.

Pursuant to resolution No. 6600 adopted by the Authority, and set forth in plaintiff's exhibit No. 20A—H in evidence, ISTHA formulated its own rules and regulations for tow truck operators, including emer-

gency road service rules for tow trucks and service vehicles with specific instructions as to the placement of warning cones and flares.[1] As revealed by these rules and regulations, as well as by other evidence, ISTHA officials were well aware of the hazard created by a stopped vehicle in a traffic lane. Defendant Terry Schrimsher, d/b/a Tri-City Towing, applied to the State Police for authority to operate as a tollway tow truck operator, ultimately was approved by ISTHA, and was assigned to the area of the accident.

---

[1] The detailed and specific nature of ISTHA's rules and regulations are exemplified in plaintiff's exhibit No. 60 in evidence, and those concerning the accident are as follows:

### "THE ILLINOIS TOLL HIGHWAY AUTHORITY
### EMERGENCY ROAD SERVICE RULES AND REGULATIONS
### FOR TOW TRUCKS & SERVICE VEHICLES

"Safety precautions should be foremost in the operator[']s mind so that his and the lives of others can be protected.

The following rules and regulations are designed to help each one take these precautions.

1. All disabled vehicles in traffic lanes or on the left side of the highway (inner lane) rate priority over other calls for assistance.

* * *

4. When stopping behind vehicles, be sure your warning lights are unobstructed to approaching traffic.

5. When approaching a disabled or damaged vehicle, either on the left or right side of the highway, turn your warning lights on.

6. Pull onto berm and decelerate stopping not closer than 20 feet (20) to the rear of the disabled vehicle whenever possible.

7. Leave motor running, set emergency hand brake, turn steering wheels hard to the direction away from the highway.

8. Ascertain immediately the nature of trouble or vehicle instructions given on the call with the driver of the disabled or damaged vehicle, if he is present.

9. Immediately put out the three (3) cones, placing them at a length of 200 feet (200) back. Place the first cone on the berm near the edge of the highway; the second two (2) feet from edge of highway about 100 feet (100) to the rear of disabled vehicle and the third, four (4) feet from edge of highway slightly to rear of disabled vehicle. Flags may be used in place of cones, in daylight hours or pot flares at night, providing the flags are at least 16" square and on bases that they will not be blown over by wind or traffic.

10. Do not perform any service until cones, flags or flares are placed. If at night, in foggy weather, or during a snow storm, place fusees back to approximately five hundred feet (500) at one hundred feet (100) intervals. At the completion of service, fusees are to be extinguished in the dirt off the berm (it might be suggested to scrape away the surface dirt with a tire iron or similar tool) and then cover the fusee.

11. When starting up, stay on the berm until you have accelerated to a speed where you can merge safely with traffic.

12. At night always wear a reflectorized vest or belt if possible.

13. Before performing services, always inform the patron or driver of the disabled

On July 10, 1981, defendants William Reis and Daniel Neeley started on a fishing trip to Minnesota in a Ford Bronco provided to Neeley by his employer, defendant Edit Chicago, Inc., as part of his employment agreement. The vehicle was owned by defendant C.A.R. Leasing, Inc., which leased the car to Edit Chicago, Inc. Reis and Neeley attached an 18-foot boat and trailer to the Bronco, but could not get warning lights to work on the boat and trailer. They then planned to have the lights hooked up after they left Chicago. Their car stalled after they entered the Northwest Tollway, between 6:15 and 6:45 p.m., in the far left or inner traffic lane. Dusk was approaching. Traffic was heavy.

Neeley was given a lift to get help by a passing motorist; they did not report the problem at the toll plaza, only one-half mile away, but drove to a gas station where Neeley and the motorist waited for a truck. The two also waited at a cocktail lounge and then returned to the site of the disabled car much later to find it gone. Meanwhile, Reis tried to direct traffic around the car, stated he turned on flashers and, after almost being knocked over, finally walked to the toll plaza. There, Reis found a tow truck whose driver, Sam Johnson, an employee of Schrimsher, informed him he was aware of the problem.

State Trooper Richard Maciejewski, assigned to the area of the accident, had requested a "sweep" of the tollway area at 8:50 p.m. Johnson, after receiving a call concerning a disabled vehicle, discovered the Bronco shortly after 9 p.m. and pulled up behind it with his Mars light flashing. He observed no working lights on the boat trailer and contacted the ISTHA dispatcher. Johnson did not mention the lack of lights; he was directed to go to the toll plaza since the patron was there. He received no oral instructions to place flares and had, in fact, run out of flares, although it was his duty and Schrimsher's to make sure flares were available. Following instructions, he picked up Reis, who expressed concern about a possible accident. As they returned to the car, Johnson saw a motorcycle laid down and the driver thrown to one side, then heard a woman screaming from under a car and called for an ambulance. Reis remembered returning after the accident and

---

vehicle, if possible, the tow service fee and estimated price of any additional product or labor.

14. Do not attempt to render any mechanical service while on the road proper. Remove vehicle to a plaza or garage for this repair.

15. Do not stand in front of vehicle while the motor is being started.

16. All emergency vehicles to be used on the toll highway must be equipped with a large size 360 degree dome amber flasher along with 6" alternating flashers on each side located toward the top at the rear of each vehicle."

noticing two cars parked behind the Bronco, boat and trailer.

Plaintiff, a passenger on a motorcycle operated by her boyfriend Anthony Vitale, was thrown under a car when, after Vitale cut into the left lane, he noticed a car stopping in front of him. He applied his brakes, causing the cycle to slide and he laid the bike down to avoid hitting the car.

Plaintiff was hospitalized and, according to testimony given by a specialist in rehabilitation medicine, a neurological surgeon, a neuropsychologist, an opthamologist, and a neurologist, suffered brain damage, blindness in her right eye and diminished vision in her left eye. Her memory was severely and permanently impaired and medical testimony indicated she was incapable of holding a job at the time of trial. Plaintiff had no memory of the accident or of being hospitalized or of high school. She had tried working several times since the accident but had been fired after a few days each time. She has trouble remembering where she is and easily gets lost; someone must accompany her whenever she goes out. Before her injuries she was lively, won awards in gymnastics and volleyball and had many friends; afterwards, she seemed to have little interest in others. Her weight increased from 110 to 210 pounds after the accident.

An expert on rehabilitative care testified that plaintiff needed residential care for 9 to 12 months at a cost of about $10,000 per month to be followed by transitional care costing approximately $7,000 per month for an indefinite time period. An economist calculated that plaintiff could have had a work life expectancy of 37.8 years and the present value of her earnings, including fringe benefits, would have ranged from $702,931 for a high school graduate, to $767,471 if she graduated a two-year college and to $895,640 if she graduated a four-year college. Plaintiff had applied to Triton College, a two-year institution. Her grades had improved in her last two years of high school after having started out very poorly.

On August 21, 1981, plaintiff filed a complaint in three counts against defendants Reis, Neeley, C.A.R. Leasing, Inc., Edit Chicago, Inc., Vitale and ISTHA. She charged the latter with carelessly and negligently maintaining the Northwest Tollway, allowing the Bronco to be in the traffic lane for a long period of time, and failing to adequately inspect the tollway, place warning devices, assist the Bronco, and remove the car from the traffic lane. Plaintiff requested $150,000 in damages from the Toll Authority. Three amended complaints were subsequently filed adding Schrimsher as a defendant, as well as countercomplaints and third-party complaints. A countercomplaint was filed by ISTHA against Reis, Neeley, Edit Chicago and C.A.R.

Leasing, Inc. In her second amended complaint, plaintiff alleged that ISTHA knew or should have known of the Bronco posing an obstruction and its negligent actions included instructing Johnson to leave his position near the Bronco, failing to instruct Johnson to remain behind the disabled vehicles with his emergency lights on and failing to instruct him to place flares and cones behind the Bronco and the trailer. ISTHA's motion for summary judgment was thereafter denied.

During the trial, four defendants agreed to a settlement with plaintiff for $1,350,000, which was approved by the circuit court in an order entered October 24, 1986, dismissing Reis, Neeley, Edit Chicago, Inc., and C.A.R. Leasing, Inc., with prejudice and dismissing all counterclaims and third-party complaints against them and any claims by them against remaining defendants Toll Authority and Schrimsher. ISTHA's motions for a directed verdict were denied. The jury awarded plaintiff damages against ISTHA and Schrimsher as previously stated.

On February 9, 1987, ISTHA filed post-trial motions, requesting arrest of judgment, a directed verdict, judgment *n.o.v.*, a new trial, a new trial for damages, remittitur and a setoff of the amount of the settlement, which were denied on April 6, 1987, except for the grant of a setoff in the amount of $1,350,000. ISTHA appeals.

## I

ISTHA first contends that it owed no duty to plaintiff because the legislature assigned to the State Police the responsibility of enforcing the laws and tollway rules and regulations; the statutes creating ISTHA and dealing with its relationship to the police should be construed *in pari materia*; ISTHA is merely an administrative agency, not a law enforcing body; and tow truck operations are the responsibilities of the police. Plaintiff responds by relying on the wide powers given ISTHA by statute and on *Sears v. Kois Brothers Equipment, Inc.* (1982), 110 Ill. App. 3d 884, 890, 443 N.E.2d 214, which observed that ISTHA had a nondelegable duty to warn the public of dangerous roadway conditions.

■ ISTHA is empowered by statute (Ill. Rev. Stat. 1981, ch. 121, par. 100—10(a)) "to make, enact and *enforce* all needful rules and regulations in connection with the construction, *operation*, management, care, regulation or protection of its property or any toll highways." (Emphasis added.) Contrary to ISTHA's contention, State Police are *not* "obligated to furnish policing service on any [ISTHA] highway"; they may do so, however, "as required by contract" (Ill. Rev. Stat. 1981, ch. 121, par. 307.18a). ISTHA, for its part, "may" negotiate

contracts with the State Police to patrol its highways. (Ill. Rev. Stat. 1981, ch. 121, par. 307.18a.) Police assigned to tollway duty must enforce ISTHA regulations. (Ill. Rev. Stat. 1981, ch. 121, par. 307.18b(c).) The ISTHA chairman testified that the agency was not required to contract with the police, but could instead use any security force it wished. Indeed, there was evidence that the agency on occasion maintained its own vehicle patrols in very heavy traffic or zero-degree weather, and had the right to approve towing companies, set towing fees and establish rules to be followed by emergency wrecker services. Under these circumstances, to read the legislative grant of power as ISTHA suggests would require the statutes to be rewritten by the courts.

In *Sears v. Kois Brothers Equipment, Inc.*, 110 Ill. App. 3d at 885-87, 890, dump bodies fell off a truck when it encountered a very rough section of roadway and decedent's automobile hit the dump bodies. ISTHA, a third-party defendant in that case, argued that a construction company engaged in repairs on its tollway, subject to contract, was responsible for placing barriers and warning devices; however, the *Sears* court concluded that the agency could not escape its duty by contract and that it was actively negligent. Similarly, in the instant case, ISTHA cannot shield itself behind its contract with the State Police.

By statute, anyone may sue ISTHA to recover damages for personal or property injury caused by acts of the agency or its officers, agents or employees acting under its direction. (Ill. Rev. Stat. 1981, ch. 121, par. 100—31(b).) From the evidence in the present case, the jury had the right to believe that Johnson failed to take any protective action when he observed the Bronco, trailer and boat obstructing a traffic lane without lights, and instead followed instructions of ISTHA's radio dispatcher to pick up the patron at the plaza, thereby leaving tollway motorists travelling at high speed with no warning of the stalled, unlighted vehicles whatsoever. The jury could have believed further, from the evidence, that this negligence was attributable to ISTHA, and could have believed that it had the duty and right to supervise and control its towing operators as its agents, rather than as independent contractors, and could terminate the relationship with them at any time. *Dumas v. Lloyd* (1972), 6 Ill. App. 3d 1026, 1029-30, 286 N.E.2d 566; *Hulke v. International Manufacturing Co.* (1957), 14 Ill. App. 2d 5, 33, 142 N.E.2d 717.

## II

ISTHA next argues that giving plaintiff's non-Illinois Pattern

Jury Instruction (IPI) No. 24 constituted the most serious and prejudicial error at trial as it imposed an erroneous standard of care based on the legislative declaration in the applicable statute. (Ill. Rev. Stat. 1981, ch. 121, par. 100—1.) Plaintiff maintains the instruction accurately stated the law and the instructions as a whole were fair. IS-THA particularly objects to the first paragraph of the instruction, which stated:

> "It was the duty of the Illinois State Toll Highway Authority to operate, regulate and maintain the Northwest Tollway in such a way as to eliminate existing traffic hazards and to prevent automotive injuries."

The instruction went on to inform the jury that such a duty could not be delegated and that it was not a defense for the agency that anyone else, including the police or the towing company, failed to remove obstructions.

■■ ■ Instructions should concisely and comprehensively provide the jury with the issues, principles of law and necessary facts to support a verdict. (*Grover v. Commonwealth Plaza Condominium Association* (1979), 76 Ill. App. 3d 500, 508, 394 N.E.2d 1273; see *Pappas v. Peoples Gas Light & Coke Co.* (1953), 350 Ill. App. 541, 546, 113 N.E.2d 585.) Instructions as a whole and in series should be clear enough not to mislead while fairly and accurately stating the law. (*Grover*, 76 Ill. App. 3d at 508.) Supreme Court Rule 239(a) (107 Ill. 2d R. 239(a)), requires that non-IPI instructions be concise, impartial and free from argument. (*Gordon v. Chicago Transit Authority* (1984), 128 Ill. App. 3d 493, 501, 470 N.E.2d 1163.) An accurate instruction may not be used if misleading or argumentative. (*Gordon*, 128 Ill. App. 3d at 501.) An instruction using statutory language is proper if not misleading and if pertinent to the issues involved. *Krantz v. O'Neil* (1968), 99 Ill. App. 2d 179, 191, 240 N.E.2d 180.

■ In the case *sub judice*, the jury received IPI Civil 2d No. A10.04 (Supp. 1981), to the effect that it was defendants' duty to use ordinary care, before and at the time of the occurrence, for plaintiff's safety and that it was defendant's duty to be free from negligence. Ordinary care was defined. The jury was also given standard IPI issues and burden of proof instructions. The issues instruction given set forth plaintiff's specific allegations of ISTHA wrongdoing, couched in the language of negligence. (IPI Civil 2d No. A20.01 (Supp. 1981).) The instruction thereafter set forth ISTHA's denial of negligence and any claimed act of omission. The burden of proof instruction followed IPI Civil 2d No. A21.02.01 (Supp. 1981), which also was phrased in standard negligence language. All instructions must be considered to-

gether. (*DiPaolo v. Johnson* (1973), 15 Ill. App. 3d 735, 740, 305 N.E.2d 194.) When we do so here we are compelled to conclude that the jury was improperly instructed. Instruction No. 24 was peremptory and "directory" as the agency suggests; it could be reasonably interpreted by the jury to mean that since ISTHA had the duty to "eliminate existing traffic hazards and to prevent automotive injuries," and because the traffic hazard in this case was not eliminated and the injuries were not prevented, ISTHA breached its duty to plaintiff. Plaintiff's attorney in fact so argued. Although the jury also was informed properly that ISTHA only had to exercise ordinary care in meeting its responsibilities, it cannot be determined which instruction was actually followed by the jury and whether the jury decided that violation of the statutory standard itself mandated liability without regard to the issue of ISTHA's negligence. *Tenenbaum v. City of Chicago* (1973), 11 Ill. App. 3d 987, 1006-07, 297 N.E.2d 716, *affirmed in part and reversed in part* (1975), 60 Ill. 2d 363.

Accordingly, this cause must be reversed and remanded for a new trial. Because other alleged errors raised may recur upon the retrial of this cause, we will address the contentions asserted by the parties.

### III

Error is identified in the circuit court's refusal to give ISTHA's instruction No. 31, which stated:

"If you find that a dangerous condition existed on the Illinois State Tollway, you must decide whether that condition existed for a sufficient amount of time so that Defendant Tollway should have discovered said condition by the exercise of reasonable care.

If you find that sufficient time to discover the dangerous condition did not exist, you must find in favor of Defendant Illinois State Toll Highway Authority and against Plaintiff on that issue."

The circuit court rejected this instruction, stating that it was "argumentative and one-sided." ISTHA asserts, however, that its instruction was necessary to inform the jury that its duty depended upon reasonable notice. Relying upon a weather report establishing that sunset in Chicago occurred at 8:26 p.m. on July 10, 1981, it suggests that the Bronco did not stall until after 8:26 p.m. and thus the jury could have concluded insufficient time existed for notice to it. Plaintiff contends the instruction was one-sided, peremptory and not properly preserved in the post-trial motion.

██ A party should provide reasoning in its post-trial motion con-

cerning why refusal of an instruction constitutes error. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 349, 415 N.E.2d 337; *Dillon v. U.S. Steel Corp.* (1987), 159 Ill. App. 3d 186, 201, 511 N.E.2d 1349.) Here, the agency merely stated that this instruction related to a requirement of plaintiff's *prima facie* negligence case. This instruction, although partially correct, is argumentative in form, is one-sided and was properly excluded. (*Meador v. City of Salem* (1972), 51 Ill. 2d 572, 581, 284 N.E.2d 266; *Macak v. Continental Baking Co.* (1968), 92 Ill. App. 2d 63, 67, 235 N.E.2d 855.) There was no error in its refusal.

## IV

By virtue of a series of allegedly improper remarks in plaintiff's closing argument, ISTHA claims it was denied a fair trial, including appeals to the jury to put itself in plaintiff's shoes, to make the tollroad see the error of its ways, referring to plaintiff's financial condition, her tragedy and other appeals for sympathy and suggesting no case had been made against settling defendants. Plaintiff contends that objections to any improper comments were promptly sustained, that some remarks were invited and others were not reversible error.

■■ Improper argument and attorney misconduct can justify requiring a new trial. (*Bisset v. Village of Lemont* (1983), 119 Ill. App. 3d 863, 865, 457 N.E.2d 138.) Juries should not become unfairly biased by appeals to their emotions. (*Brown v. G & M Distributors, Inc.* (1984), 122 Ill. App. 3d 435, 440-41, 461 N.E.2d 95.) Juries specifically should not be asked to put themselves in the places of the parties. (*Copeland v. Johnson* (1965), 63 Ill. App. 2d 361, 367, 211 N.E.2d 387; *Brant v. Wabash R.R. Co.* (1961), 31 Ill. App. 2d 337, 340, 176 N.E.2d 13.) Reference to a party's financial status may constitute reversible error. (*McMahon v. Richard Gorazd, Inc.* (1985), 135 Ill. App. 3d 211, 223, 481 N.E.2d 787; *Lake County Forest Preserve District v. Continental Illinois National Bank & Trust Co.* (1976), 35 Ill. App. 3d 942, 946, 343 N.E.2d 6.) Although sustaining an objection to a remark may be deemed to have cured any error (*Cahill v. Boury* (1986), 144 Ill. App. 3d 413, 415, 494 N.E.2d 256; *Wright v. Yellow Cab Co.* (1983), 116 Ill. App. 3d 242, 258, 451 N.E.2d 1313), here plaintiff's counsel twice made reference in closing argument to the jury members comparing themselves with plaintiff. ISTHA twice objected and each time the objections were sustained. Recognizing the seriously prejudicial nature of counsel's remarks, as well as the repetition of argument to which objection had been once before sustained, the circuit court added the second time that the comment

would be stricken and the jury should disregard it, and warned plaintiff's counsel not to repeat such remarks, which could be reversible error. Such prejudicial argument should not be repeated on retrial, nor should the assertion that ISTHA be made to see the error of its ways for the future or references to the parties that had settled.

## V

The agency claims it was prejudiced by the nonappearance of defendant Schrimsher at trial and requests our review of the circuit court's refusal to grant a continuance to obtain an evidence deposition, allow use of statements from his discovery deposition or bar closing argument by his counsel. Plaintiff responds that defendant waited until trial began to serve a notice to produce, failed to comply with Supreme Court Rule 231 (107 Ill. 2d R. 231) in requesting a continuance and that Schrimsher and ISTHA were not adverse parties.

■■ Under Rule 231(a) (107 Ill. 2d R. 231 (a)), when a party applies for a continuance, based upon the absence of material evidence, the party or his agent shall support such motion with an affidavit showing due diligence has been exercised or time was lacking to obtain the evidence, of what the evidence consists, that the evidence can be procured with additional time and, if a witness is involved, his residence or a statement that due diligence has been used to ascertain it. No such affidavit or equivalent information was presented to the circuit court; accordingly, the court did not abuse its discretion in denying ISTHA a continuance. (*Feder v. Hiera* (1980), 85 Ill. App. 3d 1001, 1003, 407 N.E.2d 799; *Westlake v. Moffitt* (1975), 30 Ill. App. 3d 597, 599, 334 N.E.2d 198.) ISTHA and Schrimsher each might have wanted to avoid liability by placing the blame on the other. (*Mernick v. Chiodini* (1956), 12 Ill. App. 2d 249, 258, 139 N.E.2d 784.) Nevertheless, ISTHA has not clearly or specifically explained how Schrimsher's testimony would have aided it. His testimony also could have aided plaintiff. Therefore, no prejudice is shown by the circuit court's actions concerning Schrimsher.

## VI

The circuit court excluded a prior assertedly inconsistent statement by Johnson that did not indicate he was given instructions by the ISTHA radio dispatcher to pick up the patron of the Bronco. The agency wished to use this statement to impeach Johnson and as an admission against Schrimsher and notes that the circuit court expressed some doubt on its ruling during the hearing on the post-trial motions. Plaintiff maintains that lack of a proper foundation barred

its use as impeachment and that Johnson was not authorized to speak for Schrimsher.

A fair reading of Johnson's earlier statement shows that it is not as inconsistent as ISTHA would have it appear. Although he does not then assert he was given specific instructions by the radio operator to pick up the Bronco patron, he does state he received a call after finding the Bronco, being unclear as to whether it came from the Oak Brook ISTHA dispatcher or from another towing company, as follows:

"Q. Okay, and what did you do after you saw it?

A. I—then I got a call to—and I don't know if it was from Oak Brook or Rogers.

Q. What is Rogers?

A. It's a towing company. To—told me the patron was walking up to plaza 17."

That portion of the prior statement is not necessarily inconsistent with Johnson's later statements, assuming the call did come from Oak Brook.

█ A proper foundation must be established before attempting impeachment of a witness to avoid unfair surprise and afford the witness an opportunity to explain. Such a foundation should draw the attention of the witness to the time, place, circumstances and substance of the statement. (*People v. Cobb* (1983), 97 Ill. 2d 465, 479, 455 N.E.2d 31; *People v. Smith* (1980), 78 Ill. 2d 298, 304-05, 399 N.E.2d 1289.) ISTHA's counsel confusingly asked Johnson about a telephone conversation, although the actual statement appears to have been made during a discussion held in person. Counsel failed to properly draw Johnson's attention to the time, place, circumstances and substance of the conversation; accordingly, the circuit court properly denied its use for impeachment.

## VII

The jury verdict is claimed by ISTHA to have been excessive, punitive, the result of sympathy and unjustified by evidence presented at trial. The agency highlights medical testimony indicating that plaintiff, in some respects, tested in an average range, as well as her poor record in her first two years of high school.

█ Assessing damages is a question of fact; courts are reluctant to overturn a jury's determination. (*Flynn v. Vancil* (1968), 41 Ill. 2d 236, 240, 242 N.E.2d 237; see *Dillon v. U.S. Steel Corp.*, 159 Ill. App. 3d at 202.) The test of an excessive verdict is whether it is within flexible limits of fair and reasonable compensation or so large as to shock the conscience of the court. *King v. American Food Equipment*

*Co.* (1987), 160 Ill. App. 3d 898, 915, 513 N.E.2d 958; *Zueck v. City of Nokomis* (1987), 160 Ill. App. 3d 140, 145, 513 N.E.2d 125.

Should a new trial again result in a verdict for plaintiff, the damages awarded must be considered with the foregoing principles as frames of reference.

## VIII

Finally, the agency complains of admission into evidence of a tollway map that contained the wording: "None of Your Tax Dollars Are Used To Operate or Maintain THE ILLINOIS TOLLWAY." ISTHA believes this was done to let the jurors know they would not have to contribute to any verdict. Plaintiff responds that the map documented ISTHA's use of safety as an enticement to patrons and that it also corrected an erroneous impression the agency gave during *voir dire* that the State was a party to the suit.

During *voir dire*, ISTHA asked questions referring to the State; for example, whether a venireman had any claims against the State. The map contains the words "Safety Comfort Convenience" on the outside back cover, directly under the words "Illinois Tollway." That same back cover includes safety tips and describes its 24-hour emergency service, noting that State Police are in direct radio contact with an ISTHA radio control room. The map was properly admitted. ISTHA did not ask that the words it considered offensive be covered up. Accordingly, no prejudicial error is apparent.

For the foregoing reasons, the cause must be reversed and remanded for a new trial.

Reversed and remanded.

BILANDIC and EGAN, JJ., concur.